BUTLER, *Plaintiff in Error*, v. DORMAN.

**Agency**: AUTHORITY TO RECEIVE PAYMENT. An agent who sells by sample and on credit, and is not intrusted with the possession of the goods to be sold, has no implied authority to receive payment. *Rice v. Groffman*, 56 Mo. 434, distinguished.

*Error to Henry Circuit Court.*—HON. F. P. WRIGHT, Judge.

*R. C. McBeth* for plaintiff in error.

The authority of Ridgely, the agent, was that of a broker. A broker has no authority as such *virtute officii* to receive payment for goods sold by him; and if payment is made to him by the purchaser, it is at his own risk. Story on Agency, § 109; Dunlap's Paley on Agency, § 270; *Higgins v. Moore*, 34 N. Y. 417. The cases of *Sumner v. Sands*, 51 Mo. 89; *Brooks v. Jameson*, 55 Mo. 505, and *Rice v. Groffman*, 56 Mo. 434, all relate to agents acting in the capacity of factors and not as brokers.

*Chas. B. Wilson* for defendant in error.

HENRY, J.—This was an action for the recovery of the balance of an account alleged to be due from Dorman to the plaintiffs. On the 12th day of September, 1874, the plaintiffs employed Wm. S. Ridgely as a traveling agent to sell goods for them by sample in the State of Missouri. On the 6th day of October thereafter, less than a month after his employment, he sold to defendant, on four months time, two bills of goods, one for $346.43, and the other for

$27.25. The agent was not intrusted with possession of the goods sold, and was expressly forbidden, by the terms of his employment, to receive payment for goods sold.

On the 12th day of October, 1874, six days after he sold the goods to the defendant, Ridgely drew a draft on the defendant for $60, and wrote requesting him as an especial favor to him to pay the draft, promising to return the money when he again reached Clinton, or to credit the amount on the bills of goods ; that he expected to return to Clinton, where defendant resided, in about ten days. Defendant paid plaintiffs all the bill except $60, insisting that he was entitled to a credit for that amount paid to Ridgely.

A jury was waived and the cause was tried by the court. The principal question for determination is presented by the first declaration of law given by the court, which was : "That if the court find from the evidence that Wm. S. Ridgely was the agent of plaintiffs only to sell merchandise by sample for plaintiffs, and that in the month of October, 1874, defendant purchased of plaintiffs, through their agent Ridgely, the bill of goods in controversy, and that some few days after said purchase said agent drew on defendant for $60, which defendant paid, then defendant is not entitled to a credit for said sum on said bill of goods against plaintiffs, unless said amount was by said agent paid over to plaintiffs, or unless said agent was authorized by plaintiffs to receive payment on such sales ; but such authority to receive payment need not be express, it may be implied from the fact of selling, unless the contrary appears." *Sumner v. Sands*, 51 Mo. 89 ; *Brooks v. Jameson*, 55 Mo. 505, and *Rice v. Groffman*, 56 Mo. 434, are relied upon as sustaining the principle announced in that instruction.

In *Sumner v. Sands* the court construed the card recognizing Shriver as plaintiff's agent, as creating a general agency. Said Adams, J.: "By the card read in evidence, which is admitted to be genuine, Shriver was held out to

the people of Shelby county as a general agent for plaintiff for that county." Shriver also had possession of the sewing machine when he sold it to the defendant. In *Brooks et al. v. Jameson* there is nothing analagous to this case. There the purchasers of the threshing machine from an agent were told, pending the negotiations for the sale, that they could pay the notes at Cameron, Missouri. Two of the notes were paid to the agents at Cameron. Vories, J., who delivered the opinion of the court, observed that " the plaintiffs, when the second note became due, had written to defendants requesting them to pay it to these same agents. This they had been told by the agents when the notes were given, was the way the payments were to be made. If the plaintiffs had by this course of dealing held out those men at Cameron as their agents to receive the money, and this induced the defendants to pay the money to the agents, they ought to be concluded thereby."

*Rice et al. v. Groffman* is no authority for the doctrine of the instruction in question. It is true it is there stated in general terms that " a power to sell goods includes a power to receive payment," but the ground upon which the decision was based appears in that paragraph of the opinion in which Judge NAPTON said: " Whatever the plaintiffs may say as to the agency of Berlzheimer, it is clear that he negotiated and effected the sale to defendant, that he had the cigars and delivered them, and there was nothing to show that he was not the owner except the bill; and conceding he was not, the presumption was that, as he had authority to sell, he had authority to receive payment."

The distinction between factors and brokers has long been settled. A factor is one to whom goods are consigned for sale. He has the possession and a special property, and on a sale may receive payment. A broker has not possession of the goods. Said Peckham, J., in *Higgins v. Moore*, 34 N. Y. 418: " It has been questioned among civilians, says Livermore, whether an authority to sell or let includes an authority to receive the price or not, and that Pothier

says this power is not generally included.   1 Liv. on Agency, 74; Polthier's *Waite des obligations* 477; but, that in some cases it will be presumed, as if goods are put into the hands of public brokers to be sold, and they are in the habit of receiving the price.   Putting the goods in their hands implies an authority to receive payment, as it does to receive payment on securities.   2 Liv., 284, 285; 3 Chitty Crim. Law, 207, 208."

In *Rice v. Groffman*, NAPTON, J., cites Story on Agency, sec. 102, for the general proposition that " a power to sell goods includes a power to receive payment on the sale," but Judge Story qualifies that general proposition with a proviso that the payment is made at the time of the sale, and in a note it is stated that the purchaser cannot pay the agent at a subsequent time, unless there be some proof of authority other than a mere power to sell.   *Seiple v. Irwin*, 30 Pa. St. 513; *Law v. Stokes*, 32 N. J. (Law) 249.

In *Seiple v. Irwin* the court said:  "It is undeniable that an agent to whom merchandise has been intrusted with authority to sell and deliver it, is authorized to receive the price; otherwise the fraud on the purchaser would run into cruelty.   This agent's powers were not embraced in that description.   He was employed only to make sales. As a check, his employers seem to have retained in their own hands the delivery of the goods and the appointment of the terms of sale.   The goods in question were so delivered as to inform the defendant sufficiently of the character of the agency.   When the agreement had been made for payment in six months, the contract was complete. The subsequent acceptance of cash, with a deduction of five per centum from the bill, was a new and totally unauthorized arrangement on the agent's part.   In making payment, the defendant took the risk of his integrity, and they must bear the loss which his unfaithfulness imposed."

These remarks are strikingly applicable to the case we are considering.   Here the goods had been sold on four

months credit, and six days after the sale was accomplished the agent drew the draft in question, which defendant paid. In *Law v. Stokes* 32 N. J. (Law) 250, the doctrine of *Seiple v. Irwin* was approved, and the court said: "An agent employed to make sales, and selling on credit, is not authorized subsequently to collect the price in the name of the principal, and payment to him will not discharge the purchaser, unless he can show some authority in the agent other than that necessarily implied in a mere power to make sales." Again, "Where an agent is intrusted with the possession of goods with an unrestricted power to sell, or payments are made over the counter of the principal's store to a shopman accustomed to receive money there for his employer, the authority to receive payment will be implied in favor of innocent persons, because the principal, by his own act, gives to the agent an apparent authority to receive such payment."

From these and other authorities that might be cited, it seems clear that where the principal has clothed the agent with the *indicia* of authority to receive payment, as by intrusting to him the possession of the goods to be sold, the purchaser is warranted in paying the price to the agent, but when the agent has not the possession of the goods, or other *indicia* of authority, and is only authorized to sell, if the purchaser pays the price to the agent he does so at his peril, and it devolves upon him, in a suit for the purchase money by the principal, to prove that the agent was also authorized to receive payment.

The declaration by the court that authority to receive payment by the agent might be implied from the authority to sell, was incorrect. The judgment is reversed and the cause remanded. All concur.

REVERSED.