MEYER, BANNERMAN & CO. v. STONE & CO.

1. AGENCY: *When agent to sell has authority to collect.*
   The rule that the authority of an agent to sell goods imports the authority to receive the proceeds of the sale is limited to cases where there are circumstances or appearances which give color to the belief in the purchaser that the authority exists.

2. SAME: *Same.*
   An agent to sell goods who has possession of them and delivers them to the purchaser, has authority to collect the purchase price; but if he is merely employed to sell, and has no possession of the goods, he has no authority to receive the price; and payment to him will not discharge the purchaser unless there is a known usage of trade or course of business to justify him in making it.

APPEAL from *Washington* Circuit Court.
Hon. J. M. PITTMAN, Circuit Judge.

*B. R. Davidson,* for appellants.

Barry was a special agent, authorized to solicit orders, by sample, for appellants. He was paid a commission on all orders taken. He did not handle the goods; had no control over them. The orders were taken in the name of

the firm; the goods were shipped directly to the purchaser, and a bill sent, showing the amount of goods and indebtedness to the firm. Barry had no authority to collect. *30 Amer. Rep.*, *795*; *68 Mo.*, *298*; *30 Penn. St.*, *513*; *32 N. J. Law*, *249*; *51 Mo.*, *89*; *56 Mo.*, *434*; *34 N. Y.*, *417*; *Dunn v. Wright*, *51 Barb.*

Where one is intrusted with the goods, a power to sell implies authority to collect at the time, but not subsequently. *Story's Agency*, *p. 102*, *n. 5.* Barry not only had no authority to collect, but he discounted the bill and collected it some days subsequent to the sale.

Appellees were allowed to introduce testimony, over objection, tending to show a local custom for drummers to collect for their houses. This, we think, was clearly error. When it is shown that an agent has power to sell by sample, with no possession or control over the goods, and is forbidden to collect, it is simply a question of commercial *law* whether a payment made to such an agent would be binding on the principal. To hold that a custom of this kind could be shown, is to introduce interminable confusion. We would have the same drummer authorized to collect for his house in one village and not authorized to collect in the next, and the house that would send a salesman out with limited powers must acquaint itself with the local customs of each hamlet. Such was never the law. *8 N. Y.*, *190*; *34 N. Y.*, *417–422*; *2 Greenl. Ev.*, *secs. 248–252*; *1 W. Bl.*, *299*; *2 Burr*, *1216.*

Witness Lewis was allowed to testify that he, at one time in the state of Missouri, bought goods of another salesman of this house, and made payment to him. Taylor also was allowed to testify to payments he had made to Barry that Barry had sent in, and he had received credit for, before he was notified that Barry had no authority to collect. This was all clearly inadmissible. The fact that Barry

had collected and remitted, without authority, from Taylor, could not have affected Stone, or induced him to make a payment, as he knew nothing of the transaction. The fact that Lewis had paid some drummer in the state of Missouri, who either had or had not authority to collect, could not have enlarged Barry's authority, or have induced Stone & Co. to make the payment, but the court received and considered this testimony.

Barry discounted this bill for cash some days after delivery of the goods by appellants. It is not claimed he had any express authority to collect or discount bills for cash. On the contrary the testimony shows he was expressly prohibited from collecting.

*L. Gregg* for appellee.

Appellants claim that Barry was their agent to sell these goods, but was not such to receive pay for them.

*First*—Appellee insists that Barry, when this transaction was had, September, 1883, was appellants' agent to sell and collect.

*Second*—That appellants sent Barry out with the appearance of a general agent, and they are bound by his acts in the line of his business.

The scope of business to be done by an agent depends upon the custom in his line of business, except by agreement with or notice to the customers.

*Third*—Appellants, being merchants, knew the custom of merchants and traveling agents in their line, and, without notice to their customers, must be governed by the general customs of the country in dealings had in their line.

*1 Pars. on Cont., 40; ib., note, p. p. 61 and 41 and 42–44; 29 La. Ann., 126; 122 Mass., 484; 76 Ind., 381; Paley*

*Agency (Lloyd), 194–200–201, 3d ed.; 11 Am. Law Register,
N. S., 658; Story Ag., sec. 102–106; 22 Wend., 348–361;
7 Baxter (Tenn.), 269; 24 Minn., 269; 65 Geo., 630; 5
Sneed (Tenn.), 469.*

Usages in business often determine agencies, where the
terms are not made known to customers.  *Story Ag., secs.
79, 92, 96–7, 105–6; 1 Pars. Cont., 61; 9 Mo. App., 359;
53 Vt., 402; 38 Am. Rep., 682.*

COCKRILL, C. J.   The appellants are merchants in the
city of St. Louis.   Their salesmen visit merchants in this
state and elsewhere, and solicit orders for merchandise,
and when successful forward the orders to their principals
in St. Louis to be filled.   The appellees who are merchants
in the town of Fayetteville, in this state, purchased a bill
of goods of the appellants through W. T. Barry, one of
their traveling salesmen, the order being taken in the
usual way, and the goods shipped by the St. Louis mer-
chants to the appellees with an itemized account showing
the indebtedness to them.   A few days after the goods
were received by the appellees, Barry called upon them
for payment, and upon the receipt of the amount of the
account, less a small discount, receipted the account in full
in the name of his principals.   The money thus received
by Barry never, in fact, reached the appellants, and they
sued the appellees upon the account.   The latter relied
and succeeded upon the plea of payment.

No declarations of law were made or refused by the
court, and the question presented is:   Does the record
disclose authority in Barry to receive payment for the
goods and discharge the debt?   It is not contended that
he had express authority to do so, but it is contended that
the authority to sell goods imports the authority to receive
the proceeds of sales.   The rule is frequently stated thus

*1. When agent to sell may collect price.*

broadly by the authorities, but an examination of the cases will show that it is properly limited to a state of case where there are circumstances or appearances which give color to the belief in the purchaser that the authority exists; and when this is true, it is immaterial as to third persons whether the authority has been actually conferred or not, for as to them, apparent authority is real authority. *Jacobson v. Poindexter, 42 Ark., 97.*

The most usual instance of the principal being bound, in this class of cases, by the act of his agent, beyond the authority conferred, is where the agent contracting for the sale, has possession of the property and delivers it to the purchaser, collecting the purchase money contrary to instructions. In that case, the possession and delivery of the property clothe the agent with the *indicia* of authority to receive the purchase price, and if the purchaser is not apprised of the limit placed upon the agent's authority, payment to the agent is payment to the principal. This incidental authority does not exist, however, if the agent is merely employed to negotiate a contract without possession of the property. The distinction is that long established between the authority of a factor and a broker. *Hill v. Crosby, 39 Ohio St., 100; Higgins v. Moore, 34 N. Y., 417; Berning v. Corrie, 2 B. & Ald., 138; Graham v. Duckwall, 8 Bush., 12.*

The Supreme Courts of Illinois, Missouri, Wisconsin and Michigan, have held that salesmen employed by commercial firms to travel and solicit orders, or sell goods by sample, have no implied authority, where nothing more appears, to collect the purchase money due their principals. *Clark v. Smith, 88 Ill., 298; Divessey v. Kellogg, 44 ib., 114; Butler v. Donnan, 68 Mo., 298; McKindley v. Dunham, 55 Wis., 515; Koseman v. Donham, 24 Mich., 36;* see, too, *Johnson v. Craig, 21 Ark., 533, 537; Seiple v. Irwin, 30*

*Penn. St.,* 513; *Law v. Stokes, 32 N. J,* (*Law*), 249; *Dunn v. Wright, 51 Barb.,* 244; *Puttock v. Warr, 3 Hurl. & N.,* 979.

The case of *Hoskins v. Johnson, 5 Sneed (Tenn.),* 469, which is perhaps the earliest reported case upon the authority of a "drummer" to collect the purchase price of goods sold upon orders solicited by him, is not reconcilable with the doctrine of the foregoing cases. According to it, the authority to collect the purchase money is an incident to the power to negotiate the sale. It has been followed in *Collins v. Newton, 7 Baxter (Tenn.),* 269, and the case of *Putnam v. French, 53 Vt.,* 402, appears to be in accord with it; but it seems clear, upon principle, that where goods are received by a purchaser from the vendors with a bill thereof payable to themselves, the bare fact that the order for the goods had been procured by an agent of the vendors, whose general duty it was to solicit such orders, would not raise the presumption that the agent was authorized to collect the purchase price. In such a case payment to the agent is no defense to an action by the vendors for the purchase money. But full validity may be given to the act of the agent in receiving payment, if there be a known usage of trade or course of business to justify the purchaser in making it. *Story Agency,* secs. 98, 413, 429; *Lawson Usages and Customs,* sec. 20, p. 49; sec. 142, p. 284.

In that case the presumption is that the agency was created with reference to the custom or course of business, and the ordinary reach of the agent's authority is thereby enlarged so as to cover the usual incidents of such an agency.

The proof in this case developed the fact that it was a general custom for commercial agents, traveling like Barry, to solicit orders, to collect the purchase money for the

goods sold by them, for their principals, and the proof was specifically directed to the custom of St. Louis agents. Isolated exceptions to the rule were proved, but in such instances the firm making the limitation indicated the fact in their bill or letter heads that payment must be made to them directly. Proof was had of the fact of two other of appellant's salesmen traveling at the same time as Barry, both of whom were in the habit of making collections as Barry did, in this instance, and remitting to the appellants. Barry, himself, it appears, made collections from other customers of this house, and remitted the money to his principals from time to time, and no complaint was made by them of this exercise of authority, until his failure to remit the money paid him by the appellees. They did not before that time inform him or any one else that he had no authority to collect. Proof of the custom referred to was admissible, not for the purpose of enlarging the scope of Barry's agency, but in order to interpret his power under it, and the specific acts of payment by other merchants to Barry and the appellants' other agents, tended to show their usual course of dealing with this class of agents, and to establish an actual knowledge on their part of the usage in this respect.

The jury, or rather the court acting in that capacity, was justified also in finding that the discount allowed the appellees was in accordance with the terms of sale made by the parties; that is, that the purchaser had the option to retain the agreed price until the expiration of the term of credit without interest, or to deduct the customary discount if paid before. *Heisch v. Carrington, 5 C. & P., 471; S. C. 24, E. C. L., 660.*

Affirm.