ADAMS v. FRASER.

(Circuit Court of Appeals, Eighth Circuit. August 2, 1897.)

No. 742.

1. FACTOR—RIGHT TO RECEIVE PURCHASE PRICE.

A factor who is intrusted with the possession of property, or other indicia of authority to transfer it, has implied power to receive the purchase price for the vendor at the time that he sells and delivers the property, or the title deeds to it.

2. SAME—RIGHT TO COLLECT THE PURCHASE PRICE AFTER MAKING THE CONTRACT OF SALE.

A broker or agent authorized to negotiate the sale of property, who concludes a contract for the vendor, which is to be performed at a future time by the delivery of the property, or the title deeds to it, and the simultaneous payment of the purchase price, has no implied authority to collect the price, to extend the time of payment, or to otherwise modify the concluded contract between the vendor and purchaser after it has been made.

3. SAME—EXERCISE OF POWER.

The defendant, Adams, was employed to negotiate the sale of certain letters patent for his principal, the Citizens' Match Company, but was not intrusted with any assignments of the patents, or power of attorney to make such. On May 18, 1886, he concluded a contract on behalf of his principal with the plaintiff, Fraser, to the effect that the latter should purchase the patents, and pay for them on August 10, 1886. After this contract was made, the defendant, without the knowledge of his principal, agreed to extend the time of performance of this contract until February 1, 1897, on condition that the plaintiff would pay to him the amount of his commission upon the sale, which he agreed to apply as a payment under the contract. *Held*, Fraser's authority as agent to sell the property was exhausted when he made the original contract, and he had no power, after that contract was concluded, to modify it, or to receive any part of the purchase price, and the plaintiff, who advanced the money in suit to Fraser without knowledge of his want of authority, was entitled to recover it back from him.

Appeal from the Circuit Court of the United States for the District of Colorado.

Charles J. Hughes, Jr., Tyson S. Dines, and Branch H. Giles, for appellant.

Henry J. O'Bryan (Edmund J. Moffat with him on the brief), for appellee.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge.     John Fraser, the appellee, brought a suit in equity against the appellant, Alonzo P. Adams, in the court below, to recover £1,000 sterling, which he had paid, and to obtain the surrender and cancellation of an acceptance for £600, which he had delivered, to Adams in part payment of the purchase price of certain patent rights which Fraser had agreed to buy from the Citizens' Match Company, a corporation in business in the city of Troy, in the state of New York.     The appellee alleged in his bill that he had been induced to pay this money and to make and deliver the acceptance by the false statement of the appellant that he was authorized by the Citizens' Match Company to receive them in part payment of the purchase price of the patent rights under Fraser's contract with it, and by other misrepresentations that are not material to the disposition of the case in this court.     Adams admitted that he represented that he had the authority, alleged and insisted that his representation was true, and the appellee proved that he was ignorant of the extent of Adams' authority, and was induced by his statement to pay the money and deliver the acceptance.     The circuit court held that Adams had no authority to collect or receive any part of the purchase price owing to the match company under its contract with Fraser, and entered the decree prayed by the bill.     Adams appealed, and the only question he presents is whether or not he had the authority which he claimed.

On January 20, 1886, the Citizens' Match Company made an agreement, and on the next day it made an amendatory agreement, with the appellant.     Both these contracts were in writing, and the provisions of them which are material to the question at issue here are: That the match company authorized Adams to sell certain English letters patent which it owned for not less than $100,000, and to negotiate sales of them at a less price, if, after diligent effort, he found the price of $100,000 was excessive in amount; that the company covenanted to pay him 20 per cent. commission on the first $50,000 which it realized from these sales, and 15 per cent. on the next $50,000, and to make any assignments and conveyances required to carry out the sales he negotiated; that Adams agreed to pay his own expenses, to make, and ultimately to sell to the company, a machine which should embody some of the inventions secured by the patents, but the company agreed that, if it refused to make or ratify bona fide offers for or sales of the patents for amounts less than $100,000, which, together with the amounts of the sales of other European patents, which the corporation, by the same agreement, authorized him to sell, would amount in the aggregate to $150,000, then it would pay him $1,000 per month for the time he spent in negotiating such declined offers; and that the corporation would not be liable to pay any commissions on any sale of any of the patents, unless the purchase money arising from such sale had been paid to the

company, or to such person or persons as it should authorize to receive and receipt for the same, before February 1, 1887. Adams went to London, and negotiated for and obtained from Fraser an offer to purchase the English patents for £8,000 sterling. He reported this offer to the corporation on May 10, 1886, and the company cabled its acceptance. Thereupon, on May 18, 1886, a written contract was made between the match company, by Adams, as its agent, and Fraser, to the effect that Fraser would purchase the patents, and would pay to the company in London £8,000 sterling for them on or before August 10, 1886, and that at that time the company would properly assign them to him, or to such persons as he should direct. On August 9, 1886, Fraser told Adams that he would be unable to pay the purchase price the next day, and soon thereafter Adams agreed to extend the time of performance of the contract of May 18, 1886, until February 1, 1887, on condition that Fraser would pay his commission on the sale, which was 20 per cent. of the purchase price. Fraser accepted the terms, and paid to Adams the £1,000, and gave him the acceptance for £600 over which this suit arose. Adams did not pay this money, nor did he deliver this acceptance to the match company. He did not report to that company that he had received them. When in October the corporation learned what he had done, it denied that Adams had any authority to receive any part of the purchase price fixed in the contract on its behalf.

A factor who has the possession of property, or who has assignments of it, or other indicia of authority to transfer it, has implied power to receive the purchase price for the vendor when he sells and delivers the property, or the title deeds to it. Pickering v. Busk, 15 East, 38; Baring v. Corrie, 2 Barn. & Ald. 137, 148. But a broker or other agent to sell property, who has concluded a contract of sale, which is to be performed by a delivery of the property, or the title deeds to it, and the simultaneous payment of the purchase price at some future time, and who is not intrusted with the possession of the property, or of the conveyances of it, has no implied authority to collect the purchase price, or to extend its time of payment, or to otherwise modify the contract between the vendor and the purchaser. Butler v. Dorman, 68 Mo. 298, 301; Seiple v. Irwin, 30 Pa. St. 513; Hahnenfeld v. Wolff (Com. Pl.) 36 N. Y. Supp. 473; Clark v. Murphy, 164 Mass. 490, 41 N. E. 674; Higgins v. Moore, 34 N. Y. 417, 419; Kane v. Barstow (Kan. Sup.) 22 Pac. 588. If the match company had intrusted to Adams assignments of its rights under the patents, or if it had given him authority, by a proper power of attorney, to convey them, and he had sold them for a price which he received at the time he delivered the conveyances, his authority to take it might well have been implied. But he had neither assignments nor authority to make them, and he did not sell these rights for cash, but simply concluded an agreement of sale between his principal and the purchaser, which was to be performed nearly three months after its date, by a simultaneous conveyance of the rights under the patents and a payment of the purchase price. When he concluded that agreement, he exhausted his power. He was an agent to sell, and when he had brought the vendor and the vendee into a binding agreement of sale, his duty was

performed, and his authority was at an end.        The agreement of May 18, 1886, was a complete and enforceable contract.        After that agreement was concluded, Adams had no authority to abrogate it, or to so change it that the portion of the purchase price which would ultimately belong to the vendor would become due five months later, in consideration of the immediate payment to him of the 20 per cent. commission, to which he would have been entitled if the entire purchase price had been paid.        Authority to make a contract of sale does not import authority to abrogate or modify that contract, and to make new ones, after it is once completed and binding.

If there was any doubt that Adams exceeded his authority, the express provisions of his contract of agency would dispel it.        That contract contains a covenant on the part of the match company to make the necessary assignments and transfers to complete the sales which Adams should negotiate.        This covenant raises the implication that the parties did not intend that he should have power to complete the sales.        The same contract contains a mutual covenant that none of the commissions which Adams was to receive should be a claim against the company "until the purchase money arising from the sale of said patents, granted or to be granted, shall have been paid to the said Citizens' Match Company, or such person or persons as they may authorize to receive and receipt for the same."        This provision is a demonstration that Adams was not, and some other person was to be, authorized to receive and receipt for the purchase price.        We are convinced that there was no error in the conclusion of the court below, that the appellant had no authority to receive the purchase price for these patent rights three months after he had negotiated and concluded the contract of sale.        The judgment below is accordingly affirmed, with costs.