VELVET RIDGE SCHOOL DISTRICT No. 91 *v.* BANK OF SEARCY.

4-5821 137 S. W. 2d 907

Opinion delivered March 11, 1940.

 

*Golden Blount,* for appellant.

*C. E. Yingling, Jr.,* and *C. E. Yingling,* for appellee.

HOLT, J. On December 22, 1938, appellant, Velvet Ridge School District No. 91, filed suit against W. C. Ward, county treasurer, and W. H. Grissom to enjoin the payment of a certain school warrant.

The complaint alleged that W. H. Grissom, acting as agent for Beckley-Cardy Company of Chicago, Illinois, in the sale of school supplies, obtained a written order from appellant school district on January 31, 1938, for certain school supplies to be delivered June 15, 1938, and that on the same date the district issued and delivered to him its warrant in the sum of $167.98 payable January 1, 1939, to Beckley-Cardy Company. On the same day he sold this warrant to appellee, Bank of Searcy.

It was further alleged that the order had never been delivered, that the warrant given in payment had been registered with the county treasurer, and that Grissom was insolvent. Copies of the order and the warrant in question were made a part of the complaint. The prayer of the complaint was that the warrant be canceled for fraud, and that the county treasurer and his successor be enjoined from paying same.

The trial court first enjoined temporarily payment of the warrant, and thereafter on February 13, 1939, at

a subsequent term of the court, entered a permanent injunction.

On March 13, 1939, appellee bank filed an intervention in which it claimed to be the owner of the warrant in question for value in due course, and prayed that the above orders and decree be set aside and canceled. To this intervention appellant school district filed an answer in which it denied the allegations thereof, and among other defenses alleged affirmatively "that the said warrant herein has been altered or changed on its face since it was delivered, and that the name of W. H. Grissom was not on same when it was written by this plaintiff," and that this constituted fraud, voiding the warrant.

Upon the issues thus joined, the cause proceeded to trial, and a decree was rendered in favor of the Bank of Searcy, from which comes this appeal.

Among the errors assigned by appellant school district is that the warrant in question, after its execution and delivery by the district to W. H. Grissom, was so fraudulently altered and changed by him as to make it void, and its payment unenforcible in the hands of appellee, Bank of Searcy, and that the trial court erred in refusing to so decree. It is our view that this contention of the school district must be sustained.

The warrant in controversy is as follows:

"No. 24 Amount
 "District School Fund $167.98
 "District No. 91
 "1-31-38
"Treasurer of White county, Arkansas

"Pay to Becker Cardy Co. or W. H. Grissom, or order, the sum of one hundred sixty-seven and 98/100 dollars from the General Fund, for ................................ School. Due Jan. 1, 1939. Elementary School ............................ High School ................................. Purpose, for seats. White ................. Negro .................

 "Leslie Fritts, Secretary.
 "D. L. Johnston, President.
"Filed March 13, 1939.
 "Grafton Thomas, Clerk."

As originally executed and delivered to Grissom, there is no serious dispute in this record, that the payee named was "Becker-Cardy Co. or order," and that Grissom, immediately after the warrant came into his hands, without authority altered and changed the warrant by adding after the words "Becker-Cardy Co." "or W. H. Grissom," so that when he sold the warrant to the Bank of Searcy it read "Pay to Becker-Cardy Co., or W. H. Grissom, or order."

In this connection appellee in its brief in effect admits this change when it says: "Admitting for the purpose of argument that the name of Grissom was added to the warrant (and in this connection we may say that we agree with the opinion expressed by the trial court that it appears that Grissom's name has been added, or at least is in a different handwriting)."

Leslie Fritts, secretary to the school board, who wrote the warrant, testified positively that the change was made after it left his hands. The president of the school board, D. L. Johnston, corroborated Mr. Fritts. In fact, appellee nowhere denies this testimony.

The question then presented here is, Was the bank, under these circumstances, an innocent holder in due course and entitled to payment on the warrant? We do not think it was.

We have many times held that a school warrant, such as we have here, is not a negotiable instrument in the sense of the law merchant and is, therefore, subject to any defense, or defenses, in the hands of a holder for value without notice, which might have been made against the party to whom it was originally issued.

In this connection this court in *Dubard* v. *Nevin*, 178 Ark. 436, 10 S. W. 2d 875, said: "The school warrants were orders upon the county treasurer to pay out of the school funds in his hands the amounts specified; and, although the warrants are negotiable in form and transferable by delivery, they are not negotiable instruments in the sense of the law merchant. *First National Bank of*

*Waldron* v. *Whisenhunt,* 94 Ark. 583, 127 S. W. 968, and *Vale* v. *Buchanan,* 98 Ark. 299, 135 S. W. 848.''

However, if we treat the warrant before us as negotiable paper, the most that the bank could claim under the rules of the Negotiable Instruments Act (act 81 of the Acts of 1913, p. 260), not being a party to the alteration in question, is its right to enforce payment according to the original tenor of the warrant in question.

According to the original tenor of the warrant before us, the payee was ''Becker-Cardy Co. or order,'' and no one could cash it except on its order or until having procured its (this company's) indorsement. When Grissom altered this warrant by inserting his own name, as heretofore indicated, he materially altered it and practiced a fraud upon the payee, Becker-Cardy Company, and made it possible to cash the warrant at appellee bank without the prior order, or indorsement of Beckley-Cardy Company.

Undoubtedly the very purpose of the directors of the school board, in making the warrant payable to the school supply house, Becker-Cardy Co., or to its order, was to insure the forwarding of the warrant in question direct to this company in payment for the supplies that the school district should have received, but which have never been delivered to it.

Before appellee bank could receive the proceeds of this warrant, it would be necessary for it to secure the indorsement of Beckley-Cardy Company.

That the alteration was a material one, under § 125 of our Negotiable Instruments Act (now § 10283 of Pope's Digest), there can be no dispute, as it necessarily changed the relation of Beckley-Cardy Company to the warrant. As the warrant originally stood it was payable to the order of Beckley-Cardy Company only. As altered, Grissom was enabled to cash it on his own indorsement.

On the effect of the fraudulent alteration of a negotiable instrument, the textwriter in Brannan's Negotiable Instruments Law, Sixth Edition, p. 1032, by illustration

states the rule as follows: "If R, a lawyer, received a check payable to his client, the C company, and wrote over the payee's name, the words 'R Atty. for' in a different colored ink, and, after depositing the check in the account which he maintained in his name as attorney in the defendant bank, he overdrew the account, held, the defendant bank was liable to the C company. The bank was not a holder in due course, and the indorsement was a forgery so that the collecting bank was liable to the true owner of the check. *Charleston Paint Co.* v. *Exchange Banking & T. Co.,* 129 S. C. 290, 123 S. E. 830."

In *Arnold* v. *Wood,* 127 Ark. 234, 191 S. W. 960, this court said: "It has been settled by this court that the alteration of a check duly signed and delivered, without the knowledge or consent of the drawer, 'although done in such manner as to leave no mark or identification of an alteration observable by a man of ordinary prudence, avoids the check as to the drawer, even in the hands of one to whom it is negotiated before maturity for a valuable consideration and without notice of the forgery,' *Fordyce* v. *Kosminski,* 49 Ark. 40, 3 S. W. 892, 4 Am. St. Rep. 18. But whether or not a check has been altered is a question of fact to be determined by a jury from the evidence adduced upon the trial of the case. Section 124 of the Negotiable Instrument Act, Acts 1913, act 81, p. 260, reads as follows: 'When a negotiable instrument is materially altered without the assent of all parties liable thereon, it is avoided except as against a party who has himself made, authorized and assented to the alteration. But when an instrument has been materially altered and is in the hands of a holder in due course, not a party to the alteration, he may enforce payment according to its original tenor'."

The appellee, however, contends (quoting from its brief): "The order for the merchandise which is in evidence was written on a form at the head of which there appears the following: 'Beckley-Cardy Company, 1632 Indiana Avenue, Chicago,' and is signed: 'Salesman W. H. Grissom.' It is obvious, therefore, that Grissom was acting as agent of the payee of the warrant as issued,

the maker of the contract, and there can be no question as to his authority to negotiate the warrant. Indeed, he could have accomplished this purpose without inserting his name as one of the payees, admitting that he did so insert it.'' We cannot agree with appellee in this contention. Appellee points to no evidence in this record in support of it, and we have been unable to find any.

We think the rule controlling the authority of Grissom as agent of the Beckley-Cardy Company in this case, as stated in *Meyer, Bannerman & Co.* v. *Stone & Co.*, 46 Ark. 210, 55 Am. Rep. 577, controls here. In that case this court held (quoting headnotes): ''The rule that the authority of an agent to sell goods imports the authority to receive the proceeds of the sale is limited to cases were there are circumstances or appearances which give color to the belief in the purchaser that the authority exists.

''An agent to sell goods who has possession of them and delivers them to the purchaser, has authority to collect the purchase price; but if he is merely employed to sell, and has no possession of the goods, he has no authority to receive the price; and payment to him will not discharge the purchaser unless there is a known usage of trade or course of business to justify him in making it.''

On this record, it is our view that the school warrant in question was materially altered and is unenforcible and void in the hands of appellee, Bank of Searcy, and the decree is accordingly reversed and the cause remanded with directions to dismiss the intervention of appellee for want of equity, and to grant the prayer for injunctive relief.