HILL *v.* DELTA LOAN & FINANCE COMPANY.

5-630                                               277 S. W. 2d 63

Opinion delivered March 14, 1955.
[Rehearing denied April 25, 1955.]

*W. H. Drew,* for appellant.

*Grubbs & Grubbs,* for appellee.

WARD, J.   This appeal deals principally with the scope of an agent's authority and with what is included in a "future advances" clause contained in a mortgage.

Appellee, Delta Loan and Finance Company, being the assignee of a note signed by appellants and also a note signed by appellant, Alex Redmon, brought this suit in chancery court asking for judgment against both appellants on the two notes and asking that said judgment be declared a lien against certain property described in the mortgage, and that the property be sold. The chancery court granted the relief prayed for, and appellants prosecute this appeal.

*Factual background.* Most of the evidence pertinent to a decision in this case is not in dispute. One exception regards the testimony as to the amount for which the notes were executed and the amount and number of payments made thereon, but we have carefully examined the record and find that the chancellor correctly determined these two issues. There was some testimony offered on behalf of appellants that one of the notes in question was signed in blank and that the amount was erroneously filled in later, but we find this testimony uncorroborated and unconvincing. Appellee introduced copies of their ledger sheets showing all payments made on the notes and appellants were unable to show any error in said records.

Appellant, Emma Hill, a negro 76 years of age, was the individual owner of Lot 1 of the Subdivision of Lot 23, Frank Clark's Map to the town of Eudora. Desiring to help provide a home for her grandson, appellant Alex Redmon, she made arrangements with the B-K Lumber Company of Eudora to construct a house on said lot for the price of $1,700.00. She and her grandson both signed the note. The principal amount of the note was $1,954.60 including interest for 36 months and was payable in monthly installments of $54.30 each, dated April 25, 1952. On the same date the note was executed or soon thereafter B-K Lumber Company sold the note to appellee. Also on April 25, 1952, Emma Hill executed a mortgage on said lot to appellee to secure the note above described. Alex Redmon signed the mortgage but his name does not appear in the body of the mortgage nor is the mortgage acknowledged by him. Included in the body of the mortgage is a sentence which gives rise to part of this litigation. It reads as follows: "This mortgage shall also be secured for any other indebtedness of whatsoever kind that the Grantee or the holder or owners of this mortgage may hold against Grantor by reason of future advances made hereunder, by purchase or otherwise, to the time of the satisfaction of this note."

The B-K Lumber Company began construction on the house and within a few days appellant, Alex Redmon,

instructed the Lumber Company to make certain additions to the house. These additions amounted to $430.00 which, with interest added and amortized as indicated above, made the total sum of $609.39, payable in monthly installments of $16.93. Redmon executed a note in the latter amount to the Lumber Company, dated May 21, 1952, and forthwith the note was assigned to appellee.

It was the contention of appellee and the opinion of the trial court that Redmon acted as agent for his grandmother in authorizing the additions to the house and that therefore the smaller note was secured by the mortgage by reason of the "future advances" clause copied above. We do not agree with appellee's contention on this point and likewise do not agree with the trial court's conclusion.

The record clearly shows that Emma Hill was the sole owner of the property included in the mortgage and that the Lumber Company and appellee were aware of this fact. Emma testified that she never authorized any additions and never knew that any were being made. It is not contended by appellee or the Lumber Company that they or either of them ever notified Emma that the additions were being made or that she otherwise had any knowledge of the fact. Appellee did show that Emma lived only a short distance from where the house was being built and that she could easily have seen the Lumber Company delivering materials, but there is nothing to indicate that she knew or should have known that any of these materials pertained to the additions. It is true that the language contained in the mortgage was sufficient to cover any advances made to Emma Hill but the record clearly shows that the materials furnished by B-K Lumber Company for the additions were not ordered by Emma Hill and that she knew absolutely nothing about the additions. Alex Redmon was the only person who authorized B-K Lumber Company to furnish said materials and he alone signed the note therefor. We cannot interpret the word "Grantor" as used in the body of the mortgage as referring to anyone except Emma Hill. The first portion of the mortgage reads "Know all men by

these parts: That I, Emma Hill . . . Grantor
. . ." In *Berger* v. *Fuller,* 180 Ark. 372, 21 S. W. 2d
419, the court construing similar language in a "future
advances" clause, though under a different factual sit-
uation, stated: "This language as we construe it has
reference only to the debt due primarily from the mort-
gagor to the mortgagee and does not include debts which
might be purchased from third parties."

We recognize that the advancements made by B-K
Lumber Company to Alex Redmon would be covered by
the mortgage clause mentioned above if it were true, as
appellee insists, that Redmon was the agent of his grand-
mother and that he acted within the scope of his author-
ity in ordering the additional materials. Appellee calls
our attention to statements made by Emma Hill to the
effect that she did not tell her grandson what materials
to use or that he was limited in the amount of purchases.
The significance of this testimony however is overcome
by other facts and circumstances present in this case.
It is undisputed that Emma Hill contracted to spend
only $1,700.00 for the house and that she never author-
ized or knew of any additions. Therefore there was no
occasion for her to remind Redmon that he should not
spend any additional money for materials. It would be
an entirely different situation if the Lumber Company
had been able to show either that Emma Hill authorized
the extra purchases or that, after the said purchases
were made, she had knowledge of them and made no
objection. It appears clear to us that when Emma Hill
contracted with the Lumber Company to build a house
for a certain amount and executed her note and mort-
gage therefor she thereby gave the Lumber Company
notice of the limits of her grandson's authority. When
the Lumber Company made advances to the grandson in
excess of that authorized by Emma Hill without securing
the consent of Emma Hill it did so at its own risk.

One general rule of agency is stated in 2 Am. Jur.,
p. 76, § 95, this way:

. "A person dealing with a known agent is not authorized under any circumstances blindly to trust the agent's statements as to the extent of his powers; such person must not act negligently, but must use reasonable diligence and prudence to ascertain whether the agent acts within the scope of his powers."

Section 96 of the same authority under the heading "Of Special Agent or Agent Having Special Authority" states:

· "When one deals with a special agent or an agent who has only special authority to act for his principal, he acts at his peril, for he must acquaint himself with the strict extent of the agent's authority and deal with the agent accordingly."

The same rules announced above are stated in different words in 2 C. J. S., p. 1188, § 92, and p. 1197, § 93b.

In the case of *First Bank and Trust Company of Ottumwa, Iowa* v. *Welch, et al.*, 219 Iowa 318, 258 N. W. 96, which dealt with a mortgage, containing a "future advancement" clause, signed by a husband and wife, it was held that advancements made to the husband without the knowledge and consent of the wife were not covered by the mortgage. While the facts in the cited case are unlike the facts in the case under consideration, the reasoning employed there is applicable here.

To sustain its contention on the question of agency appellee relies on the holdings in *Mississippi Valley Construction Company* v. *Charles T. Abeles & Company*, 87 Ark. 374, 112 S. W. 894; *American Southern Trust Co.* v. *McKee*, 173 Ark. 147, 293 S. W. 50, and; *Courtney* v. *G. A. Linaker Company*, 173 Ark. 777, 293 S. W. 723. A careful reading of these decisions shows that these cases are not controlling. The first citation states that where a party deals with an agent without any disclosure of the agency he may elect to treat the after discovered principal as the one with whom he contracted and hold him alone responsible. The second citation states in effect that a principal is liable for the unauthorized acts of the agent if they were within the apparent scope of his power

and the principal knowingly permits the agent to exercise the authority. The last citation lays down the rule where a principal holds out a certain person as his agent he will be bound by his acts even though the agency has been secretly cancelled.

It follows therefore that appellee is entitled to a judgment against both appellants for the balance due on the larger note and to have a lien therefor declared against the property in question, and it is also entitled to have judgment against Alex Redmon for the balance due on the smaller note but not to a lien therefor against the property.

*Application of payments.* In view of the conclusion above reached it is necessary to reconsider the trial court's decree in regard to the application of certain payments. The testimony shows that after the suit was filed Emma Hill at different times from May 18, 1953, to September 29, 1953, made total payments of $470.00 to appellee's attorney. These payments were credited by appellee, with the approval of the court, on the smaller note which was signed only by Alex Redmon. In support of this it is pointed out that Emma Hill, in making the payment, did not specify which note was to be given credit and that therefore they had the right to make their own selection. Ordinarily this would be true but not so in this instance. There was no occasion for Emma Hill to direct the application of these payments as she manifestly thought, and had a right to think, they would be applied to the only note which she had signed and which she ever admitted owing. It is our conclusion that the amount of $470.00 mentioned above should be credited on the larger note.

In all respects other than those mentioned above the decree of the trial court is affirmed but it is remanded with directions that a decree be entered consistent with this opinion.

The Chief Justice dissents as to the reversal.