## FIRST PENTECOSTAL CHURCH OF
## JESUS CHRIST *v.* KOPPERS COMPANY, INC.

83-70                                                    655 S.W.2d 403

### Supreme Court of Arkansas
### Opinion delivered July 11, 1983
[Rehearing denied September 12, 1983.]

*Laser, Sharp & Huckabay, P.A.,* for appellant.

*Wright, Lindsey & Jennings,* for appellee.

RICHARD B. ADKISSON, Chief Justice. After a trial, the Pulaski County Chancery Court found for the appellee, Koppers Company, Inc., and dismissed the complaint filed by appellant, First Pentecostal Church of Jesus Christ, in which the church alleged that an agent of Koppers had breached a contract to provide certain building materials to remodel the church. The church sought to recover $40,000 in compensatory damages for undelivered materials and expenses incurred and $125,000 in punitive damages for willful, wanton, and fraudulent conduct of Koppers and its agent. On appeal we affirm.

In the fall of 1980 officials of appellant church contacted a draftsman about remodeling their church. The draftsman drew up a profile of the proposed changes and additions and agreed to locate the necessary materials for the job. On November 26, 1980, he called Koppers at one of its principal offices in Magnolia, Arkansas, to see if it could provide decking material and a certain type of beam he wanted to use in the church. He had heard that Koppers was a reputable company and had a 15-page Koppers brochure which contained the Magnolia address and phone number of the company. The draftsman explained to Koppers what he wanted, and Koppers informed him that he should talk with their sales representative for the Little Rock area, Perry Reed, doing business as Construction Sales Company, and gave him his phone number.

Several days later Reed, the draftsman, and several church members met at the church to discuss the remodeling project, and Reed assured them that it could be done. Reed then submitted the draftsman's profile to Koppers, and Koppers prepared shop drawings which the church later approved. In January of 1981 Reed presented church officials with a written proposal on a standard Koppers form. It

listed the materials that Koppers was to furnish, gave the total price as $51,650.38, with a "Less 5% for cash in advance" price of $49,143.08. The bottom portion of the proposal contained the following paragraph:

> This proposal, when accepted by buyer and when thereafter approved by an authorized official of seller at one of its principal offices, will become a contract. Until so approved, it is not a contract and is not binding on the seller in any way. If not accepted by buyer within ____ days, this proposal is subject to possible price revision.

The proposal was signed by Perry Reed as Koppers' sales representative and by Freddy L. Cross for the church. The space for Koppers' authorized official to approve the proposal was blank and was never signed. On January 23, 1981, the church gave Reed a check in the amount of $49,143.08 made payable to Construction Sales Company.

Delivery of the beams was initially scheduled for March but construction was delayed, and the materials were not needed as early as originally thought. When the church called Reed to advise him of the delay, Reed stated the materials could be delivered at any time on two weeks notice. In June church officials contacted Reed to inform him that they were ready for the beams. In July the beams still were not there, so one of the church members finally placed two calls to Koppers. He was told both times to check with Reed. In late July the church finally learned from Koppers that the beams were not coming from Koppers. When Reed was confronted with this information, he finally admitted that he had had to order the beams from another company, Southern Laminators. The beams finally arrived on September 14, 1982. However, Reed was never able to furnish the decking material that was included in the proposal. The church finally obtained it from another company.

Employees of Koppers testified that Koppers never manufactured the beams nor supplied the decking material because Koppers never approved the proposal that the church and Reed had signed. According to them, Reed never

submitted the signed proposal to Koppers but instead submitted a form for a "buy sell" arrangement; in other words, Reed himself would buy the materials from Koppers and resell them to the church. Koppers, however, refused to allow Reed to purchase the materials on credit because he already owed them a substantial amount of money and Reed, because of financial difficulties, was unable to pay cash. Koppers terminated Reed as a sales representative on April 15, 1982.

Appellant argues the trial court erred in finding for Koppers and dismissing its complaint because Koppers was liable for the acts of its agent, Reed. Appellant alleges that Reed had actual or apparent authority to solicit the order, submit the Koppers proposal form to the church for it to sign, and to collect the purchase price from the church. Under those circumstances, appellant reasons, Koppers should be held liable for Reed's breach of contract.

The rule is well established that a principal is not responsible for acts of an agent unless the acts are within the actual or apparent authority of the agent. *Forest Park Canning Co.* v. *Coler*, 226 Ark. 64, 287 S.W.2d 899 (1956). We stated in *Hill* v. *Delta Loan & Finance Co.*, 224 Ark. 785, 277 S.W.2d 63 (1955) that a person dealing with a known agent is not authorized under any circumstances to blindly trust the agent's statements as to the extent of his power; such person must not act negligently, but must use reasonable prudence to ascertain whether the agent is acting within the scope of his powers. And the rule that the authority of an agent to sell goods imports authority to receive the proceeds is limited to cases where there are circumstances which give color to the belief by the purchaser that the authority exists. *Velvet Ridge School Dist. No. 91* v. *Bank of Searcy*, 200 Ark. 85, 137 S.W.2d 907 (1940).

Here, Reed had the authority to solicit the order for the materials, but he did not have actual or apparent authority to bind Koppers to a contract which Koppers never saw and never accepted. The proposal which the church signed clearly states, in average size type, that it is not a contract until approved by an authorized official of Koppers. These

words appeared on the front side of the proposal, immediately preceding the space designed for signatures. The church official who signed the proposal testified that he saw this language and read it. The proposal also provided a space for an authorized official of Koppers to sign, which was left blank, as well as a space for the signature of the sales representative. Furthermore, appellant's check for the materials was made out not to Koppers but to Construction Sales Company. Under these circumstances we cannot say that the chancellor's finding that Reed did not have authority to bind Koppers is clearly against the preponderance of the evidence.

Appellant also argues that Koppers is estopped from denying liability because Koppers retained at least $37,000 that Reed sent to Koppers in payment on his open account which, according to appellant, is directly traceable to Reed's receipt of money from the church. We cannot agree with appellant's argument because here, although Perry Reed did make out a check for approximately $37,000 to Koppers, he did so *before* obtaining the appellant's check. Attached to this check were invoices from five projects other than appellant's. It is undisputed that Reed owed Koppers over $100,000 on his open account and, therefore, Koppers had a right to receive payment for goods it had previously sold to Reed on this account.

Affirmed.