HOT STUFF, INC. *v.*
KINKO'S GRAPHIC CORPORATION, Inc.

CA 93-1354                                             901 S.W.2d 854

Court of Appeals of Arkansas
En Banc
Opinion delivered June 28, 1995
[Rehearing denied August 16, 1995.*]

---

*Pittman, J., not participating.

*Gill Law Firm*, by: *Joe D. Calhoun*, for appellant.

*Taylor & Montgomery*, by: *Joel Taylor*, for appellee.

JOHN E. JENNINGS, Chief Judge. This is an ordinary debt case with questions involving the law of agency. In August 1992, Benny Turner ordered $23,000.00 worth of programs for the 1992 August in Arkansas Festival from Kinko's Graphics. Kinko's billed Hot Stuff, Inc., and when Hot Stuff refused to pay, Kinko's filed suit. A Pulaski County circuit judge, sitting as the trier of fact, awarded judgment for the amount sought and Hot Stuff appeals. We find no reversible error and affirm.

Mark Abernathy is the chief executive officer of Hot Stuff, Inc., and the owner of 59% of the stock in the corporation. Hot Stuff, Inc., apparently operates Juanita's Mexican Restaurant in Little Rock. Abernathy is also an employee of Blue Mesa, Inc.

August in Arkansas, a Little Rock festival, was Mr. Abernathy's idea. In 1992 he was "Director of Development" for August in Arkansas, Inc., a non-profit organization created to

conduct the festival. Much of the work on the festival was done out of the offices of Hot Stuff, Inc., located in the Juanita's restaurant building.

Mr. Abernathy was also the president of and sole stockholder in Great Festivals, Inc., organized to help August in Arkansas, Inc. For the 1992 festival, Great Festivals had a contract with August in Arkansas which provided that, if the festival was a success, Great Festivals would be paid $80,000.00 plus 20% of the net profits.

Benny Turner is a "talent buyer." In 1992 he was an "in-house promoter" at Juanita's, employed by Hot Stuff, and had an office above the restaurant. Mr. Abernathy could not say whether Turner was an employee of Great Festivals, Inc. Mr. Turner was the music director for August in Arkansas. During 1992, Tamera Harris was an employee of Kinko's Graphics Corporation, Inc., a printing concern. She testified that during that year she waited on Turner approximately once or twice a week. He ordered printing jobs such as tickets and advertisements for entertainment at Juanita's and charged those orders on an account entitled "Juanita's Hot Stuff." She testified that Hot Stuff paid those charges. The largest order was $140.00. Harris worked on a commission basis.

In August 1992 Turner called her to order $23,000.00 worth of programs for the 1992 August in Arkansas festival. He asked if there would be any problems in charging this to "our account." It is undisputed that the only account Turner ever charged to was the Hot Stuff account.

Carroll Lamb was the manager of the Kinko's store and testified that Hot Stuff had had an account there since 1989. He testified that Harris called him about Turner's program order and he told her that she should call and verify with Abernathy. He also asked for a $5,000.00 down payment which was never received. There is no indication that Harris followed Lamb's instructions.

Mr. Abernathy testified that the festival directors agreed to have a program printed and for Turner to handle it. He testified that they had not authorized him to charge it to "any specific particular entity."

Mr. Turner testified that he specifically told Harris he needed

the festival programs done for August in Arkansas. He also testified that he was to be paid $20,000.00 if the festival was a success but he was not sure by whom he would be paid.

The programs were delivered in two lots. The first delivery was made to Mr. Turner's office above Juanita's on August 12. The bill was made out to "Hot Stuff/Juanita's" and was signed for by Mr. Turner. The second delivery was made to Riverfront Park the day before the festival. Once again the bill was made out to Hot Stuff and Mr. Turner signed it.

Mr. Abernathy testified that he first became aware that the programs had been charged to Hot Stuff the night before the festival. He testified that he "didn't give it a second thought" because they had so many things going on.

Unfortunately, the 1992 August in Arkansas Festival was not a financial success. Approximately ten days after the festival, Abernathy contacted Kinko's to protest the billing of the programs to Hot Stuff.

Although appellant argues that Mr. Turner was not its agent, there is no question that Turner was employed by the corporate defendant. The real issue before the trial court was whether Turner had the authority, expressed or implied, to charge the festival programs to the appellant. Whether an agent is acting within the scope of his actual or apparent authority is a question of fact. *Henry* v. *Gaines-Derden Enters., Inc.*, 314 Ark. 542, 863 S.W.2d 828 (1993); *Crail* v. *Northwestern Nat'l Ins. Co.*, 282 Ark. 175, 666 S.W.2d 706 (1984). The agent's scope of authority, like any other fact question, may be established by circumstantial evidence. *See Hawthorne* v. *Davis*, 268 Ark. 131, 594 S.W.2d 844 (1980); *Undem* v. *First Nat'l Bank*, 46 Ark. App. 158, 879 S.W.2d 451 (1994); AMI Civ. 3d 104. The general principle of interpretation of scope of authority is that an agent is authorized to do, and to do only, what it is reasonable for him to infer that the principal desires him to do in the light of the principal's manifestation and the facts as he knows or should know them at the time he acts. *Restatement (Second) of Agency* § 33 (1958). In determining the scope of authority, circumstances which may be properly considered include the situation of the parties, their relations to one another in the business in which they are engaged, and facts of which the agent has notice respecting

the objects which the principal desires to accomplish. *Restatement (Second) of Agency* § 34. If the authorization is ambiguous, the interpretation acted upon by the parties controls. *Restatement (Second) of Agency* § 42. Acquiescence by the principal in conduct of an agent whose previously conferred authorization reasonably might include it, indicates that the conduct was authorized. *Restatement (Second) of Agency* § 43.

■ We will not reverse a trial court's finding of fact unless it is clearly erroneous. In the case at bar, we cannot say that the court's findings that Turner was acting within the scope of his authority was clearly against a preponderance of the evidence.

Affirmed.

ROBBINS and ROGERS, JJ., concur.

PITTMAN, J., not participating.

JOHN B. ROBBINS, Judge, concurring. The majority of this court is of the opinion that the trial court's finding that Benny Turner was acting within the scope of his authority was not clearly erroneous. While I concur with the majority in an affirmance, I believe that the trial court was clearly erroneous on this point.

The trial court and majority opinion appear to rely heavily on a question which Benny Turner asked Kinko's sales employee, Tamera Harris, when he placed the $23,000 order for the August in Arkansas brochures. He asked whether there would be any problem in charging the order to "our account." Even if the trial court found as a matter of fact that Turner's reference to "our account" was intended to mean Hot Stuff's account, this is not a basis for imposing liability on Hot Stuff unless Turner was an agent of Hot Stuff and had the actual or apparent authority to incur this debt.

The evidence clearly showed that Benny Turner was an agent of Hot Stuff, Inc. The evidence also showed that the scope of Turner's agency authority was to charge to Hot Stuff's account printing work which Kinko's performed for Juanita's, a restaurant owned by Hot Stuff. There was a total absence of proof, however, that Turner had any actual authority to charge to Hot Stuff's account at Kinko's any printing work performed for the August in Arkansas Musical Festival. Consequently, the only

possible basis on which the court could find that Turner was authorized to charge the $23,162.53 printing bill to Hot Stuff's account at Kinko's for the August in Arkansas brochures bought by Turner was on the basis of apparent authority.

Prior to this $23,000 order the average charge Turner made at Kinko's on Hot Stuff's account was approximately $20.00, and the largest charge was somewhere between $50.00 and $75.00.[1] Kinko's sales clerk, Tamera Harris, had some doubt as to Turner's authority to charge such a large order because she called Carroll Lamb, Kinko's store manager who was at home on vacation, before accepting the order. Mr. Lamb also had reservations about charging this large order to Hot Stuff's account because he instructed Ms. Harris to verify it with Mark Abernathy, the President of Hot Stuff, Inc. Ms. Harris failed to make this verification.

Apparent authority in an agent is such authority as he appears to have by reason of the actual authority which he has and such authority as a reasonably prudent man, using diligence and discretion, in view of the principal's conduct, would naturally suppose the agent to possess. *Arkansas Poultry Fed'n Ins. Trust* v. *Lawrence*, 34 Ark. App. 45, 805 S.W.2d 653 (1991). A person dealing with a known agent is not authorized under any circumstances to blindly trust the agent's statements as to the extent of his power; such person must not act negligently but must use reasonable prudence to ascertain whether the agent is acting within the scope of his powers. *First Pentecostal Church of Jesus Christ* v. *Koppers Co.*, 280 Ark. 101, 655 S.W.2d 403 (1983). Kinko's was negligent in charging the $23,000 order to Hot Stuff's account for Turner, even if the trial court could find that Turner actually requested this to be done. Negligence by one dealing with an agent does not substitute for, nor constitute, apparent authority. It is simply unreasonable for Kinko's to believe that Turner, who had never charged anything to Hot Stuff's account except printing for Juanita's Restaurant and the most expensive such order was no more than $50.00 to $75.00, had authority to

[1]The majority opinion suggests that Kinko's employee, Tamera Harris, testified that Turner's largest order was $140.00. Although Harris testified that the largest order for Juanita's had been $140.00, she did not say that Turner was the one who incurred the $140.00 charge.

charge a $23,000 order to Hot Stuff for an August in Arkansas printing job. For these reasons, it is my opinion that the trial court erred in finding that Turner had apparent authority to incur the liability on Hot Stuff's account.

Kinko's complaint against Hot Stuff also alleged ratification of Turner's acts by Hot Stuff. This allegation was fully tried before the trial court and both parties addressed this issue on appeal. The parties treat this issue as if the trial court found that Hot Stuff did ratify Turner's charge to Hot Stuff's account. Although the trial court's letter opinion and judgment do not speak to this theory of Kinko's action, everyone appears to assume that the trial court did, so I will as well.

The substance of the doctrine of ratification is the idea of confirmation after conduct; the doctrine is based on evidence of such complex factual elements as knowledge of the facts, acceptance of benefits, change of position, agency, and approval of conduct. *Arnold* v. *All Am. Assurance Co.*, 255 Ark. 275, 280, 499 S.W.2d 861 (1973). Ratification proceeds upon the assumption that there has been no prior authority and constitutes a substitute therefor; it is in the nature of a cure for authorization and is equivalent to original, prior, or previous authority. *Id.* It is well settled in Arkansas that, when the principal has knowledge of the unauthorized acts of his agent, and remains silent when he should speak, or accepts the benefit of such acts, he cannot thereafter be heard to deny the agency but will be held to have ratified the unauthorized acts. *Id.* at 281-82. Ratification may be implied, rather than express, and implied ratification may be inferred from the acts and words of the principal. *Id.* at 282. Affirmance of an unauthorized transaction may be inferred from a failure to repudiate, or from receipt or retention of benefits of the transaction with knowledge of the facts. *Id.*

Mark Abernathy and Benny Turner admitted they eventually became aware of the $23,000 charge to Hot Stuff's account; with this knowledge they decided to keep the programs and sell them at the festival anyway; and would notify Kinko's of the problem later. Based on these facts, I do not believe the trial court was clearly erroneous in finding ratification. Therefore on this basis, I would affirm.

JUDITH ROGERS, Judge, concurring. I am in full agreement

that this case be affirmed on the issue of ratification stated in Judge Robbins' concurring opinion, and I join in that portion of that opinion. However, unlike the cuncurrence, I feel that it is not necessary to express an opinion on the agency issues, since the trial court's decision can be upheld solely on the question of ratification. Therefore, I do not join in that part of the concurring opinion.