JOHNSON *v.* WYNNE.

Opinion delivered October 21, 1905.

AGENCY—RATIFICATION.—One can not be held to have ratified the unauthorized acts of an assumed agent unless he knowingly approved of the agent's acts, or accepted the fruits thereof.

Appeal from Clay Circuit Court, Western District.

ALLEN HUGHES, Judge.

Reversed.

### STATEMENT BY THE COURT.

James Johnson and James H. Davidson were the owners of a saloon business at Poplar Bluff, Missouri. They were also engaged in operating a sawmill near Corning, Ark. Johnson resided at Corning, and looked after the business there, while Davidson had charge of the saloon business at Poplar Bluff. About the time Johnson and Davidson engaged in the saloon business, they borrowed one thousand dollars from the Bank of Corning, and W. R. Wynne signed the note that they executed for the loan.      He had no interest in the loan, and was only a surety. Johnson and Davidson paid about $200 on the note, and the balance, about $850, remained unpaid, and was eventually paid by Wynne, the surety.      About the time Wynne paid the balance due on the note, one Philo Powell made an agreement with John-son to buy his interests in the saloon business at Poplar Bluff. Johnson offered to sell if Powell would pay $50 cash and take Johnson's place in assuming the debts of the firm, and specially to make some arrangement by which Johnson could be released from liability to Wynne for the sum he had paid the bank for Johnson and Davidson. Powell accepted the offer, though the evidence as to whether he did so unconditionally or not is conflicting. In pursuance of this agreement, he went to see Wynne, who offered to turn over to him his claim against Johnson and Davidson, provided Powell would give his own note for the amount of the claim, and secure it by a mortgage on his land. Powell executed the note and mortgage, and left the same with an attorney to be delivered to Wynne if Powell consummated the purchase of the saloon.      To enable Powell to convince Johnson that Powell could take up Johnson and Davidson's note and release him from liability to Wynne, Wynne turned over to Powell the note to the bank which he had paid as surety. Powell carried his note to Johnson, and Johnson testified that Wynne told him that any trade he made with Powell would be all right, as Powell had secured him by a mortgage; that he (Johnson) then sold his interests in the saloon to Powell; that Powell paid him $50 in

cash, and indorsed on the note that Johnson was released from liability thereon, and agreed to assume Johnson's part of the other saloon debts; that he then delivered Powell a writing, addressed to Davidson at Poplar Bluff, stating that he (Johnson) had sold his interest in the business to Powell. Johnson further testified that this was an absolute sale of his interest in the saloon, and that it was understood that in part consideration thereof he was discharged from liability to Wynne on the bank note.

On the other hand, there was evidence tending to show that this discharge of Johnson was on condition that Powell, after invoice of the saloon stock, should accept Johnson's interest and also deliver his note and mortgage to Wynne in settlement of the amount paid by Wynne to the bank for Johnson and Davidson; that Powell ascertained that the debts of Johnson and Davidson in the saloon business equalled the assets, and refused to accept them; that thereupon Davidson paid him back the money he had paid Johnson, and Powell took up the note and mortgage which he had executed to Wynne and placed in the hands of a lawyer, and the trade between him and Wynne was rescinded.

Soon after this Davidson sold out the saloon business at Poplar Bluff to a third party. The consideration was $2,800, which was paid in two notes of $1,000 each, payable to Johnson and Davidson, one note for $300, and a sight draft for $500, The $500 draft and one of the notes for $1000 were deposited in the bank of Corning by Davidson, and so much as was collected thereon placed to the credit of Johnson and Davidson. The other note for $1,000 was used to pay off debts of Johnson and Davidson in St. Louis.

As to whether any of the proceeds of this sale came to the hands of Johnson, the evidence was conflicting, but it was not disputed that a part of it was used to pay debts of Johnson and Davidson.

The court, among other instructions to the jury, gave the following instruction, at the request of plaintiff, over the objection of the defendants:

"If you find from the evidence that the defendant Johnson was released from his liability on the note sued on in this case, and that the consideration for said release was the sale by Johnson to one Philo Powell of Johnson's interest in a saloon that

belonged to Johnson and Davidson, and that Davidson afterwards sold the whole saloon, and took in part payment notes of J. D. Morris, payable to Johnson and Davidson, and that Davidson afterwards indorsed one of said notes to the Bank of Corning as collateral to secure the indebtedness of Johnson and Davidson to the Bank of Corning, then, if you find from a preponderance of the evidence that Johnson afterwards, knowing of the transfer, urged the collection of said note when it came due, or if you find that any of the proceeds of the sale was paid on the debts of Johnson and Davidson, and that Johnson knew of it and consented thereto, you will find for the plaintiff."

There was a verdict in favor of plaintiff. Defendant filed a motion for a new trial, and, the same being overruled, the defendant appealed.

*J. N. Moore, J. L. Taylor* and *F. G. Taylor,* for appellants.

Instruction 1 was erroneous in placing appellee in inconsistent positions. Instruction 3 was erroneous in recognizing a rescission made without authority from Johnson. 64 Ark. 213; Bishop on Contracts, § 812; *Ib.* (2 Ed.), § 823. In order to rescind, it is necessary first, within reasonable time, to give notice of the intention, second to make, or offer, restitution of anything of value received under contract. 24 Am. & Eng. Enc. Law, pp. 645-6. Release of one of several jointly, or jointly and severally bound, is a release of all. 16 Ark. 331; 44 Ark. 349; 45 Ark. 290; Daniel, Neg. Inst., § 1294.

*D. Hopson,* for appellee.

A judgment of a trial court will not be disturbed if there is evidence to support it. 23 Ark. 131; 40 Ark. 168; 57 Ark. 577; 58 Ark. 125; 44 Ark. 556; 46 Ark. 542. Erroneous instruction is no cause for reversal unless it is apparent that the jury was misled. 62 Ark. 228; 59 Ark. 431; 46 Ark. 485. Nor is it error to refuse instructions substantially covered by instructions already given. 34 Ark. 383; 34 Ark. 550; 43 Ark. 184.

RIDDICK, J., (after stating the facts.) This is an action by Wynne, a surety, against Johnson and Davidson, the two principals in the note paid by the surety. It is admitted that the surety paid the note, and, so far as the defendant Davidson is concerned, the evidence shows no defense whatever. But there

was evidence tending to show that one Powell purchased the interest of Johnson in the saloon business of Johnson and Davidson and that it was agreed between himself and Johnson and Wynne that Powell should assume the debt of Johnson to Wynne, and that Johnson should be released from further liability to Wynne for that debt. There was at least some evidence tending to show that this trade was consummated, and that Johnson was released, and that, with Wynne's knowledge and consent, an indorsement to that effect was made on the note which Wynne had paid. The defendant Johnson set up this agreement for a release as a bar to the action of Wynne. Counsel for Wynne contend that the trade between Powell and Johnson was never consummated, and that Johnson was never released, and that if it was consummated it was afterwards rescinded. They say further that, after the negotiations of Powell for the purchase of an interest in the saloon were broken off, Davidson, acting for Johnson, agreed with Powell to rescind the contract of purchase and release, and thereupon repaid to Powell the money he had paid Johnson on his purchase, and, acting for himself and Johnson, sold the saloon business to a third party, and took the purchase money notes in the name of Johnson and Davidson, and deposited them in the bank to the credit of Johnson and Davidson; that so much of the notes as was collected was placed to their credit and drawn out by them; and that this conduct of Johnson was a ratification of the acts of Davidson in rescinding the contract of purchase with Powell, and in selling the business to another party for the benefit of himself and Johnson. If Johnson did these acts with knowledge of the attempted rescission made by Davidson with Powell, and knowing the fact that Davidson was selling the saloon business as the property, not of Davidson and Powell, but as the property of himself and Johnson, this contention would be sound. But a ratification presupposes a knowledge of the act ratified, and before the acts of Johnson referred to can be treated as a ratification of the rescission made for him by Davidson with Powell it must be shown that he had some notice of such acts of Davidson, and that with this knowledge he accepted the fruits of the rescission, or acted in a way that showed that he approved of the acts of his agent.

Counsel for plaintiff, by the instruction asked by him, which is set out in the statement of facts, and which the court gave, seems to admit that there was evidence tending to show that Johnson had sold his interest in the saloon business to Powell, and that in consideration thereof Wynne had released his claim against Johnson for money paid as surety, but he contends that, if this was so, and if Davidson afterwards sold the saloon, and took notes payable to himself and Johnson, and Johnson afterwards urged the collection of those notes, or consented that the proceeds should be applied to the debt of Johnson and Davidson, he was then liable to Wynne in this action. But this contention does not seem to us to be sound. We must keep in mind that, if the sale by Johnson of his interest in the saloon business to Powell was actually consummated, and if, in consideration thereof, Wynne released his claim against Johnson for money paid, that sale and release could not, in the absence of fraud, be set aside without the consent of Johnson. It is true that if Davidson, acting for Johnson, agreed with Powell to rescind it, and Johnson afterwards ratified this act of Davidson's, the rescission would be in effect the act of Johnson, and would bind him. But, as we have before stated, in order to show a ratification by Johnson, it must be shown by evidence, either direct or circumstantial, that Johnson had notice of the act done by his agent. And right on this point is where the instruction given by the court at the request of counsel for plaintiff seems to us to be defective, for it makes Johnson liable to Wynne in this action if he urged the collection of the notes taken by Davidson in the name of Johnson and Davidson, in payment of the saloon business, or if Johnson consented that any of the proceeds of said notes should be paid on the debts of Johnson and Davidson, regardless of whether at that time Johnson had notice of Davidson's attempted rescission of the contract of sale and release made by Johnson with Powell and Wynne or not. Now, if Johnson had been released from this claim of Wynne, then, in the absence of any knowledge by him of the attempted rescission made by Davidson with Powell, it cannot be said as a matter of law that the mere fact that he urged the collection of the notes given to Davidson in the name of Johnson and Davidson amounted to a ratification of the rescission. It is a well-known fact that the partnership

name often remains the same after the personnel of the firm
has changed. The new firm may carry on business under the
old name. If Johnson had no notice of the fact that Powell had
attempted to rescind his contract of purchase, he might have
urged the collection of the debts, not because the money was
coming to him, but to aid the new firm which had assumed the
debts of the old firm, and in whose success he was interested to
that extent. It can not therefore be said, as a matter of law, that
such action on his part amounted to a rescission, though it might
be potent evidence tending to show such rescission. If, after
having sold his saloon business to Powell, Johnson treated the
proceeds of that business as his own, this would no doubt be
evidence, probably very strong evidence, that the sale to Powell
had not been consummated; or, if consummated, that it had been
rescinded; but the instruction complained of did not submit
that question to the jury, but told them, as a matter of law, that
if Johnson urged the collection of notes given for the saloon
business, they should find for the plaintiff. The latter clause of
this instruction was, in view of the facts, specially objectionable.
It, in effect, told the jury to find for the plaintiff if any of the
proceeds of the sale of the saloon business was with Johnson's
consent paid on the debts of Johnson and Davidson. Now, as
before stated, the evidence shows that Powell agreed to take
Johnson's place and assume his part of the debts. When the
saloon business was sold, it was entirely proper that the pro-
ceeds should go to the payment of the creditors of that business,
and the fact that Johnson consented that this should be done did
not set aside a release made by Wynne, or give Wynne the
right to sue him, for the payment of the debt was a part of the
contract of release.

The questions in this case are, first, did Wynne, in consid-
eration of a sale by Johnson of his interest in the saloon busi-
ness to Powell, release Johnson from the debt which he now
claims against him. Second, if there was such a sale and
release, did Johnson ratify the subsequent agreement of the other
parties thereto with Davidson that it be set aside? The evidence,
we think, tends to show that he did; but that was a question for
the jury, which in our opinion was not properly submitted.

For the reasons stated the judgment is reversed, and the cause remanded for a new trial.