BORDEN, INC *v.* R. L. WOMMACK, EXECUTOR OF THE ESTATE OF MARTIN RONNING, DECEASED

5-6189                                             490 S.W. 2d 781

Opinion delivered February 26, 1973

*Putman, Davis & Bassett,* for appellant.

*Wommack & Lineberger,* for appellee.

CARLETON HARRIS, Chief Justice. Appellee, R. L. Wommack, executor of the estate of Martin Ronning, instituted suit against appellant, Borden, Inc., on March 18, 1971, seeking damages resulting from an alleged unreasonable delay on the part of Borden in registering a transfer, and delivering back to the executor, certain shares of its corporate stock. The damages sought were based upon a decline in market value of such stock be-

tween the date that the stock (according to appellee) should reasonably have been transferred and delivered, and the date of the actual transfer and delivery. Borden, appellant herein, responded to the complaint with a general denial. Thereafter, appellee filed "Request for Admissions of Fact" which were answered by appellant in due time. Appellant then filed a cross-complaint against A. G. Edwards & Sons, Inc., stockbroker,[1] but no action has been taken on such cross-complaint. On March 3, 1972, appellee filed a motion for summary judgment against Borden, alleging that there were no genuine issues of material fact and that he was entitled to judgment as a matter of law. This motion was supported by the affidavit of Wommack, the verified complaint and appellant's response to request for admission of facts. The trial court advised the litigants that the motion for summary judgment would be heard on March 23, and on March 20, counsel for appellant notified the court by letter that it declined to file any opposing affidavits, but wound up the letter by stating that it "would reserve the right to file opposing affidavits in the cause should the court decide that appellee's motion was proper and meritorious, and would further request that the motion be set down for a hearing in the event it should become necessary." On March 23, the court heard the motion, argued by counsel for both sides, and granted appellee a summary judgment in the amount of $7,376.00. From that judgment, appellant brings this appeal. For reversal, it is simply asserted that the court erred in granting summary judgment since material facts remained in dispute, and that the damages awarded by the court had no basis under the evidence or facts adduced.

Background of the litigation reflects that Martha Ronning owned a number of shares in Borden, Inc. at the time of her death on October 11, 1968. Her estate was probated in the Washington County Probate Court, and

---

[1]This pleading alleged that if any liability should attach to Borden, such was the sole and proximate result of the negligence of Edwards, it being asserted that Edwards caused the stock certificates to become lost after appellant had returned the re-issued certificates; that Borden and its transfer agents exercised due and ordinary care in both the issue of the transferred certificates and the replacement certificates for those lost by Edwards, and judgment over and against Edwards was prayed by Borden. Edwards appeared specially with a motion to quash, but the court has never passed on that motion.

an order was issued out of that court distributing this stock. Nine hundred twenty-three shares were distributed to Martin Ronning, the surviving husband of Martha. According to the affidavit made by Wommack in support of appellee's motion for summary judgment, he, as attorney for Martin Ronning, administrator of the estate of his wife[2], on June 1, 1969, delivered all of the stock certificates, a certified copy of the order of the Washington County Probate Court, a certified death certificate, and other documents required to effectuate the transfer of the stock, to the Fayetteville office of A. G. Edwards & Son, Inc. (hereafter called Edwards), directing that the securities be forwarded to the defendant or its duly authorized transfer agent for transfer and redistribution or reissuance in accordance with the order of the probate court. The balance of the supporting affidavit reads as follows:

"8. That immediately thereafter, I was informed by an agent of A. G. Edwards & Sons, Inc., that it had forwarded the aforesaid securities and all supporting documents to the duly authorized transfer agent for Borden, Inc., and requested that it reissue and redistribute said securities in accordance with the aforesaid Order of the Washington County Probate Court.

9. That subsequent thereto, I repeatedly demanded of the defendant, Borden, Inc., and its transfer agents, The Chase Manhattan Bank of New York City, New York, and the First National City Bank of New York City, that it transfer the aforesaid shares of stock, and more particularly the 923 shares which were to be delivered to Martin Ronning, and that it makes and deliver the proper and usual certificates of said transfer to Martin Ronning.

10. That despite said demands, the actual transfer and delivery of the aforesaid shares of stock was not effectuated until on or about June 22, 1970.

11. That I am familiar with the fair market value of Borden, Inc., stock. The aforesaid shares of Bor-

[2]Martin Ronning died prior to the institution of the suit.

den, Inc., stock had a fair market value on the respective dates as set forth below as follows:

| DATE | HIGH | LOW | CLOSE |
|------|------|-----|-------|
| (a) July 25, 1969 | 28 | 27¾ | 27¾ |
| (b) June 22, 1970 | 19¾ | 18⅝ | 19¾ |

DATED: February 22, 1972.

/s/ R. L. Wommack
R. L. Wommack, Executor of the
Estate of Martin Ronning, Deceased"

Appellant did not file any affidavits until after the hearing, but on April 12, filed the affidavits of Kenneth J. Neagle, an officer of Borden, Inc., and H. P. Goodwin, an officer of the First National City Bank of New York, which succeeded the Chase Manhattan Bank, N. A. as transfer agent for Borden, Inc. These affidavits, though containing information that might well be pertinent, will not be discussed, since they were not considered by the trial court, and properly so, not having been filed until after the hearing on March 23.[3] Accordingly, no controverting affidavits were presented by appellant, but this does not mean that appellee is entitled to the judgment. Of course, we have said many times that a summary judgment is proper only where there is no genuine issue as to any material fact, and the moving party is entitled. to judgment as a matter of law. *Wilson, et al* v. *McDaniel, et al,* 247 Ark. 1036, 449 S.W. 2d 944. Likewise, in *UPI* v. *Hernreich, D/B/A Station KZNG,* 241 Ark. 36, 406 S.W. 2d 317, we pointed out that though no controverting affidavits are filed, the movant for the summary judgment still has the burden of establishing that there is no genuine material fact

[3]Also appearing in the record are affidavits of Martin A. Jones, Assistant Treasurer of Chase Manhattan Bank, N.A., to the effect that he had forwarded the reissued stock to Edwards, and the affidavit of Michael E. Rogers, an officer of the Edwards Company that it had not received the stock. These affidavits were not made until May 4 and April 20, 1970, respectively, and the record does not reflect when they were filed as exhibits; they were not, of course, considered by the Washington County Circuit Court since they were not even in existence at the time the judgment was rendered.

question, and this must be shown on the record as made. In other words, he cannot rely upon the failure of his adversary to controvert the facts set out in his own affidavit.

Without mentioning some matters set out in the affidavit that might require bolstering, we think the court clearly committed error in awarding summary judgment for $7,376.00 for the reason that we are unable to determine the basis for using the date of July 25, 1969. It will be noted that the court took the low figure of the fair market value of July 25, 1969 and the high figure of the fair market value on June 22, 1970, being a difference of eight points, and thus arrived at the amount of the verdict. The answer to why the date of July 25 was selected by the court, apparently of its own volition, is set out in appellee's brief wherein he states that the court concluded that the transfer should have been registered and the stocks delivered within a period of approximately eight weeks, and appellee says that such a conclusion was justified. We are unable presently to agree with this last statement. While we certainly agree with appellee that waiting a year to transfer and deliver the reissued shares of stock was an unreasonable length of time, we are not able to say that eight weeks was reasonable; at least, there is nothing in the record to suggest the appropriateness of this date, nor any showing whatever that eight weeks was a reasonable period of time for reissuance of the stocks. Certainly, we cannot take judicial notice that eight weeks is a reasonable time.

Not only that, but the evidence offered by appellee in support of its motion is somewhat conflicting. While the affidavit of Wommack relates that the stocks were turned over to Edwards on June 1, 1969 and that he was immediately thereafter informed by Edwards[4] that it had forwarded the securities and supporting documents to the transfer agent for Borden, this is somewhat

---

[4]Hearsay. See *Organized Security Life Insurance Company* v. *Munyon,* 247 Ark. 449, 446 S.W. 2d 233, where we said:

"It must be affirmatively shown, or appear from statements contained in any affidavit supporting or opposing a summary judgment, that it is based upon personal knowledge of the affiant, that the facts stated therein would be admissible in evidence and that the affiant is a witness competent to state these facts in evidence."

in contradiction with the response to Request for Admission No. 9, answered by appellant at the request of appellee. Request No. 9 reads as follows:

> "*Request No. 9:* Admit that prior to August 1, 1969 your duly authorized and appointed transfer agent, Chase Manhattan Bank of New York City, New York, received, with instructions for transfer, the following stock certificates:
>
> NAME OF CO.     CERTIFICATE NO.     NO. OF SHARES
>
> (Here is listed the certificate numbers and number of shares of stock sent in by appellee.)
>
> Total number of shares:     1,844
>
> *Response:* Admitted."

Of course, "prior to August 1, 1969" could mean any date from June 2, 1969 through July 31, 1969. This was the only admitted evidence relative to when Borden received the stock certificates. There is nothing in Wommack's affidavit and nothing in the pleadings that provides that information, and it will be remembered that the affidavits of appellant; being filed late, were not considered. Yet, the court fixed a date (July 25, 1969) which, according to the evidence considered in granting the summary judgment, could have been *before* appellant received the securities.

The court erred in granting the summary judgment.

Reversed and remanded.