## JOE A. ARNOLD v. ALL AMERICAN ASSURANCE COMPANY

73-92                                         499 S.W. 2d 861

Opinion delivered October 15, 1973

*W. K. Grubbs Sr.,* for appellant.

*Richard E. Griffin* and *Robert J. Johnson,* for appellee.

JOHN A. FOGLEMAN, Justice. This appeal questions the propriety of a summary judgment recovered by appellee insurance company against Joe A. Arnold, its agent in Eudora. The liability asserted by appellee arose through the issuance by Arnold of eight certificates of credit life insurance for a total of $11,163.04 on the life of Van B. Austin, who died on January 8, 1972, while all were in force. Appellee's recovery was based upon the issuance of certificates in excess of $10,000, the limit on Arnold's authority. Because of evidence of appellee's ratification of the agent's acts, we agree with appellant that the summary judgment against him was erroneous.

Arnold was an officer of The Eudora Bank. The certificates issued by him were coincident with loans made to Austin by that bank. The numbers, dates and amounts were as follows:

| Certificate No. | Date | Amount |
|---|---|---|
| 3695S | 1/20/70 | $ 3,489.84 |
| 698S | 3/5/71 | 3,416.76 |
| 632S | 3/26/71 | 800.00 |
| 1883S | 6/14/71 | 856.44 |
| 1782S | 8/17/71 | 1,000.00 |
| 1783S | 8/17/71 | 800.00 |
| 1784S | 8/17/71 | 200.00 |
| 1785S | 8/17/71 | 600.00 |
| TOTAL | | 11,163.04 |

These were all issued under a credit life master policy issued by appellee to the bank on April 21, 1969, on which date Arnold was appointed as appellee's agent. Under the provisions of the policy, the insurance on the life of the bank's borrower was effective simultaneously with the making of the loan if the name of the debtor was furnished and the insurance premium paid. The policy limited coverage to $10,000 on the life of any one debtor. It provided for payment, upon death of an insured debtor, to the bank to the extent of its interest, and since the certificates were "level term" any excess was then to be paid to the estate of the debtor.

By letter of September 4, 1969, appellee directed Arnold's attention to the limitation on his authority to issue certificates on the life of one debtor. Appellee furnished its agent a form for reporting certificates issued under the master policy and remitting the premiums. These reports were made monthly. The form did not provide a place for listing names of debtors, but about the twenty-fifth day of each month a copy of each certificate was transmitted to appellee along with the report and remittance for the total premiums involved.

Appellee promptly paid $10,000 to the bank, but did not pay the excess to the executrix of Austin's estate until after she had filed suit and obtained judgment against appellee. Appellee defended on the basis of the master policy limits, and cross-complained against Arnold for any amounts it was required to pay Austin's estate, alleging that he had exceeded his authority. Arnold defended by pleading estoppel and waiver of both the policy limita-

tion and the limitation on his authority. Both appellant and appellee then filed motions for summary judgment based upon the pleadings, answers to interrogatories and requests for admissions. The circuit court granted appellee's motion and rendered judgment for $800.

It was disclosed that appellee, after paying the bank, tendered the return premium on certificates 1784S, 1785S and for partial cancellation of 632S exactly two months after Austin's death. No explanation is made for the apparent random selection of policies on which to return the premium, but it is clearly indicated that the $10,000 payment included certificate number 1783S, issued on the same date as 1784S and 1785S. There is no indication that issuance of certificate number 632S was unauthorized, because the amount of credit life insurance on Austin outstanding prior to the issuance of this $800 certificate was only $6,906.60. Arnold stated in his affidavit that he never received notice of issuance of certificates on Austin's life in excess of limits until after claim was made on the policies by Austin's executrix. Appellee admitted that, prior to the death of Austin, it had not notified either the bank or Austin of any over-issue of certificates. By answers to interrogatories, appellee stated that, under its procedures, each individual certificate is reviewed to determine compliance with the terms of the master policy. It also informed the court that a data processing control system to disclose issuance of certificates in excess of $10,000 on the life of one person had been established after January 1, 1972, but that the system was new and still in the process of being perfected. Appellee admitted receipt before September 1, 1971, of Arnold's report and premium remittance dated 8/24/71 covering the period from July 29, 1971, to August 24, 1971, together with copies of certificates 1782S, 1783S, 1784S and 1785S.

The circuit judge held that appellee was entitled to recover $800 from Arnold, as a matter of law. We do not agree. The judgment was based upon the court's finding that appellee advised Arnold of the cancellation of excessive certificates as soon as it knew of the over-issue. Apparently, the judgment was limited to the face amount of certificates 1784S and 1785S, because the issuance of certificate 632S did not result in an over-issue.

We do not know how the court arrived at the finding that, as a matter of law, appellee acted to cancel the excess certificates as soon as it knew of the over-issue. It is admitted that a full report of the issuance of each certificate on Austin's life had been in the hands of the insurance company for at least four months prior to Austin's death. The information included the date and term of the certificate, its amount, the name of the debtor insured and a designation of the master policy. Consequently, appellee had been informed of everything Arnold knew relating to these particular certificates. Even when appellee remitted $10,000 to the bank on February 23, 1972, it did not then tender any return premium or attempt to cancel any certificate. It waited for two weeks thereafter to do so, at which time demand for payment of the excess had been made by the attorney for Austin's estate.

At the outset, we point out that appellee's argument that the judgment should be affirmed because there is substantial evidence to support it has no application to a summary judgment in its favor. The only conditions that justify granting a summary judgment are those under which the moving party is entitled to judgment as a matter of law. *Borden, Inc.* v. *Wommack,* 253 Ark. 1067 (1973), 490 S.W. 2d 781; *Weathers* v. *City of Springdale,* 239 Ark. 535, 390 S.W. 2d 125; Ark. Stat. Ann. § 29-211 (Repl. 1962). These conditions exist only when there is no genuine issue as to any material fact and when, even though the facts are undisputed, reasonable, fair-minded persons could only draw one conclusion from them. *Borden* v. *Wommack,* supra; *Wilson* v. *McDaniel,* 247 Ark. 1036, 449 S.W. 2d 944; *Mason* v. *Funderburk,* 247 Ark. 521, 446 S.W. 2d 543; *Harvey* v. *Shaver,* 247 Ark. 92, 444 S.W. 2d 256; *Bergetz* v. *Repka,* 244 Ark. 60, 424 S.W. 2d 367. We do not find such a condition to prevail here. The burden was upon appellee to show its entitlement to summary judgment, and if there is any substantial evidence on which a contrary result could be reached, the judgment should be denied. *Widmer* v. *Modern Ford Tractor Sales,* 244 Ark. 696, 426 S.W. 2d 806; *Wirges* v. *Hawkins,* 238 Ark. 100, 378 ,S.W. 2d 646; *Reddell* v. *Missouri Pacific Railroad Company,* 238 Ark. 753, 384 S. W. 2d 486. See also, *Knox* v. *Goodyear Stores,* 252 Ark.

530, 479 S.W. 2d 875. Appellee failed to meet this heavy burden.

Appellant contends that since he had made full disclosure to his principal of all information he had relating to the issuance of the Austin certificates, appellee had all the knowledge appellant had of the overissue; and, by failing to protest and keeping the premiums until claim was made on the certificates by Austin's estate, it waived the limitation on his authority, ratified his acts in the premises and is estopped to seek reimbursement from him. Insofar as the evidence disclosed by the record relied upon on the motions for summary judgment is concerned, we agree with appellant. To say the least, there is a genuine, material issue of fact raised by appellant's defense.

In the law of agency the concept of ratification is closely related to the doctrine of estoppel, even though the two may be distinguished. The matter is discussed by the authors of Corpus Juris Secundum. They say:

> Ratification is a doctrine of agency, which is well-established in the common law, and it refers to the express or implied adoption and confirmation by one person of an act or contract performed or entered into in his behalf by another without authority. * * * The substance of the doctrine of ratification is the idea of confirmation after conduct, and the doctrine is based on evidence of such complex factual elements as knowledge of the facts, acceptance of benefits, change of position, agency, and approval of conduct. Ratification proceeds upon the assumption that there has been no prior authority and constitutes a substitute therefor; it is in the nature of a cure for authorization and is equivalent to original, prior or previous authority.[1]

> Although it has been observed that in the literature of the law there has often been little disposition to distinguish between ratification and estoppel in pais, they are, nevertheless, distinguishable, * * *.

[1] 2A C.J.S. 646, Agency, § 63

The substance of ratification, as distinguished from that of estoppel which is the inducement to another to act to his prejudice, is confirmation after conduct. Although acts and conduct amounting to an estoppel in pais may also amount to a ratification, the elements of an estoppel in pais are not, as such, required to be present in order to have a complete ratification. Hence, where there exists, in fact, a sufficient ratification, there is no need of invoking the doctrine of estoppel.[2]

* * * notwithstanding their capability of being distinguished, ratification and estoppel are closely allied; the legal effect thereof is the same; the abstract difference between them may not render it improper to consolidate them, or to include one in the other, in the concrete consideration of the facts of a particular case; and the terms "ratification" and "estoppel in pais" are sometimes used in a way which seems to ignore any distinction between them.[3]

The agent may sometimes invoke estoppel against his principal when the latter seeks to hold him responsible for unauthorized acts. If the principal upon being informed of them does not promptly repudiate them, he will be estopped to deny the agent's authority, and this is so where he has knowledge of such acts and accepts the benefit of them.[4]

While it cannot be said that Arnold was induced to exceed his authority by any act of his principal, we will consider the matter in the light of the interrelationship of the two principles rather than according to the strict abstract distinctions between them. The facts pleaded and shown on motion for summary judgment are sufficient in our opinion to raise the questions of waiver, estoppel and ratification.

It is well settled in Arkansas law that when the principal has knowledge of the unauthorized acts of

[2] 2A C.J.S. 649, Agency, § 64
[3] 31 C.J.S. 377, Estoppel, § 60
[4] 2A C.J.S. 638, Agency, § 61

his agent, and remains silent, when he should speak, or accepts the benefit of such acts, he cannot thereafter be heard to deny the agency but will be held to have ratified the unauthorized acts. *St. Louis-San Francisco Railway Co.* v. *Lee Wilson Company*, 212 Ark. 474, 206 S.W. 2d 175. It is also clear that ratification may be implied, rather than express, and implied ratification may be inferred from the acts and words of the principal. *Kirkpatrick Finance Company* v. *Stotts*, 185 Ark. 1089, 51 S.W. 2d 512. It has been said that affirmance of an unauthorized transaction may be inferred from a failure to repudiate it, or from receipt or retention of benefits of the transaction with knowledge of the facts. Restatement of the Law, Second Edition, Agency, §§ 94, 98, 99; 3 Am. Jur. 2d 560—564, Agency, §§ 175, 176, 178. Of course, less is required to constitute a ratification as between the principal and a third party than between principal and agent. *Kirkpatrick Finance Company* v. *Stotts*, supra. However, it seems to be well recognized that ratification of unauthorized acts of an agent acting in excess of his powers releases the agent from liability to the principal for violation of his duty, if the principal has full knowledge of all the circumstances at the time of the ratification and has not been obliged to affirm the act to protect his own interests or induced to do so by misrepresentation or duress of the agent. Restatement of the Law, Second Edition, Agency, § 416; 3 Am. Jur. 2d 571, 587, Agency, §§ 186, 210.

A fundamental requirement to finding ratification, at least when the principal has not received any benefits from the transaction, is that the principal have full knowledge of all material facts connected with the transaction and not merely an opportunity to know them. *McCarroll Agency* v. *Protectory for Boys*, 197 Ark. 534, 124 S.W. 2d 816; *City National Bank* v. *Riggs*, 188 Ark. 420, 66 S.W. 2d 293; *Bank of Hoxie* v. *Wollen*, 181 Ark. 843, 28 S.W. 2d 61; *Coffin* v. *Planters Cotton Company*, 124 Ark. 360, 187 S.W. 309. But failure to object may constitute acquiescence or ratification, if from the facts and circumstances adduced in evidence, it can be said that the principal must have known, or

had knowledge of facts to put him on notice, of the agent's unauthorized actions. *Brown* v. *Maryland Casualty Company*, 246 Ark. 1074, 442 S.W. 2d 187; *American Mortgage Company* v. *Williams*, 103 Ark. 484, 145 S.W. 234. See also, *Johnson* v. *Wynne*, 76 Ark. 563 89 S.W. 1049. Ratification is a question of fact for a jury whenever the facts are in dispute or are such that reasonable men could draw different conclusions therefrom, and is a question of law only when the facts are undisputed and unequivocal. See *Johnson* v. *Wynne*, supra; 3 Am. Jur. 2d 564, 779, Agency, §§ 178, 359. See Restatement of the Law, Second Edition, Agency, p. 244, § 94, Comments a, b; p. 254, § 98, Comments c, d.

Even though it is ordinarily true that the principal must have knowledge and not mere notice of the facts and circumstances relating to the agent's action before there can be a ratification of them, the principal is charged with such knowledge, when benefits accrue to or are retained by him, if from all the facts and circumstances in the case he knew or could have known the material facts. *Lakeside Bridge and Steel Company* v. *Duvall*, 179 Ark. 963, 19 S.W. 2d 1107.

If it is inferable from all the facts and circumstances that appellee accepted or retained the premiums on the questioned certificate with full knowledge of all the facts, or with knowledge of facts sufficient to put it on notice of the over-issue, a factual issue was presented. *Alexandria Refining Company* v. *Harper*, 173 Ark. 1180, 292 S.W. 135; *Johnson* v. *Wynne*, supra. If, from all the circumstances in evidence, appellee could have known that the agent had exceeded his authority and still retained the benefits accruing to it, a jury would be justified in inferring that appellee actually had sufficient knowledge upon which to base a finding of ratification. *Lakeside Bridge & Steel Company* v. *Duvall*, supra. See also, *Johnson* v. *Wynne*, supra.

We find a close parallel to this case in *Neeley* v. *Wilmore*, 131 Ark. 328, 198 S.W. 710, which puts to rest any doubt about the propriety of a summary judgment

in this case. There the principal sought to recover from its plantation manager the amounts he paid its bookkeeper as salary in excess of the amount due. The payments were made by drafts signed by the manager which showed upon their face that they were for salary. Annual statements of the account on which the drafts were drawn were furnished to the principal. The manager testified that the books were open to inspection by the principal when he visited the farm and that the annual statements included the checks drawn in favor of Harrison on his salary account. The circuit judge instructed the jury to the effect that continuing to pay the drafts if the principal knew, or by the exercise of reasonable care should have known, that the salary account was overdrawn constituted ratification. We said:

> If any examination had been made by appellants they would have seen at the end of each year that Harrison had overdrawn his account. By continuing to pay drafts for his salary when they knew that his salary accounts were overdrawn, or were in possession of facts which would lead to such knowledge, they ratified the action of appellee. It was the duty of appellants to have examined the drafts showing overpayments of salary to Harrison, and they will be deemed to have been in possession of the knowledge which such an examination would have imparted to them. The continued payment of drafts drawn by appellee in favor of Harrison for his salary after this, as above stated, constituted a ratification of appellee's action. Hence the instruction was not erroneous.

The only excuse offered by appellee for not having full actual knowledge of the over-issue is that the certificates were filed by it under the name of the creditor holding the master policy, so that it had no means of determining whether multiple certificates on one life had been issued in excess of the limits of the master policy and of the agent's authority. To put the matter most favorably to appellee, the determination whether it was charged with knowledge of the over-issue under these circumstances would pose a jury question.

Upon this view of the matter, the judgment must be reversed and the cause remanded for further proceedings consistent with this opinion.