Harold W. NASH, Plaintiff-Appellant,

v.

David BUCHANAN and Mildred G. Buchanan, Defendants-Appellees.

No. 81–1945.

United States Court of Appeals, Tenth Circuit.

Aug. 22, 1983.

---

Michael E. Krasnow of Krasnow & Ming, Oklahoma City, Okl., for plaintiff-appellant.

William E. Woodson, Norman, Okl., for defendants-appellees.

Before McWILLIAMS, BARRETT and McKAY, Circuit Judges.

McKAY, Circuit Judge.

This is an appeal by Harold Nash from the district court's judgment in favor of the defendants, David and Mildred Buchanan, in a diversity suit brought by Mr. Nash for breach of contract.

In early 1979, Mr. Nash and Mr. Buchanan signed an agreement for Mr. Nash to buy two nursing homes owned by the Buchanans. In addition, the contract purported to grant Mr. Nash an option to buy a third nursing home the Buchanans owned. A few months later, Mr. Nash and both Buchanans closed the sale of the first two homes. Mr. Nash then informed the Buchanans that he intended to exercise his option to buy the third nursing home. The Buchanans refused, and Mr. Nash brought this suit for specific performance or damages.

After a trial to the bench, the district court found for the Buchanans. The court held that the option was too vague to be enforceable since it was impossible to tell whether it was actually an option or just a right of first refusal. The court also stated that even if the purported option were sufficiently precise to be an enforceable contract, it was not valid since Mrs. Buchanan, a co-owner of the nursing homes, had neither signed nor ratified it, and Mr. Buchanan had no authority to grant the option on her behalf.

The contested provision stated the following:

As part of this Contract, the Sellers agree to grant an option to the Buyers, from January 1, 1980 to January 31, 1980 for the further purchase of the Sellers [sic] 80 bed nursing home in Cyril, Oklahoma, such sale to be effected on the following terms:

| Sales Price: | $620,000 |
| Down Payment: | |
| Term: | 300 equal monthly payment [sic] of $5,795.51 each which [sic] includes principal and interest of 10½%. |

Plaintiff's Exhibit 1. Mr. Nash testified that since he thought the contract price for the first two nursing homes was too high, he would not have signed the contract had it not contained this option.

Unlike an option, a right of first refusal confers a right to purchase property only once the grantor has elected to sell. This clause gives no hint of any such requirement; we think that it unequivocally grants Mr. Nash an option to purchase the Cyril, Oklahoma nursing home. It contains no ambiguity to suggest that it merely grants a right of first refusal. Since the

language of the contract is clear in this regard, the trial court erred in relying on Mr. Buchanan's testimony to conclude that the contract means something other than what it says. *See Dooley v. Cordes,* 434 P.2d 289, 293–94 (Okl.1967).

■ The Buchanans argue that even if the disputed clause clearly grants Mr. Nash an option to buy the Cyril nursing home, it is nevertheless fatally vague since it does not specify whether the beds and inventory in the nursing home were to be included in the sale. While the clause does not specify whether the nursing home's equipment was part of the sale, we do not think that this ambiguity is sufficient to render the clause unenforceable. Under Oklahoma law, which disfavors voiding contracts for vagueness, an agreement is sufficiently certain to be binding if it is precise enough for a court to ascertain the existence of a breach and formulate a remedy. *Firstul Mortgage Co. v. Osko,* 604 P.2d 150, 153 (Okl.Ct.App.1979). In this case, the crux of the contract was to sell Mr. Nash two nursing homes and grant him an option to buy a third; the inclusion or exclusion of equipment in one of the three homes is an ancillary ambiguity and can be resolved as a matter of construction. We therefore hold that the trial court erred in determining that the clause was too vague to be enforceable.

■ The trial court additionally held that the contract was unenforceable since Mrs. Buchanan had not authorized Mr. Buchanan to sell her part of the property and had not signed or ratified the contract. At trial, Mr. Nash argued that Mrs. Buchanan, who had accepted Mr. Nash's payment for her share of the sale of the other two nursing homes, was estopped to deny Mr. Buchanan's lack of authority under Okla.Stat.Ann.

tit. 16, § 11 (West 1951). Under this statute,

> Any person . . ., having knowingly received and accepted the benefits or any part thereof, of any . . . contract relating to real estate shall be concluded thereby and estopped to deny the validity of such . . . contract, or the power or authority to make and execute the same. . . .

The trial court apparently decided that although Mrs. Buchanan had accepted benefits of the contract by receiving payment for the two nursing homes sold to Mr. Nash pursuant to the contract, she had not done so "knowingly" since she thought that the option was actually a right of first refusal. We think that "knowingly" cannot be interpreted so expansively. In *Mayer v. Pettigrew,* 272 P.2d 411 (Okl.1954), the Oklahoma Supreme Court held that "knowingly" in section 11 means "with knowledge of the purpose and source of such benefits." *Id.* at 412. In *Mayer,* a litigant challenging the validity of a contract to sell land was not estopped since, although he had received some payments under the contract, he thought the payments were tax refunds rather than payments for the land. Mrs. Buchanan, on the contrary, knew that she was receiving payment from Mr. Nash for the two nursing homes he was buying pursuant to the contract. She knew both the source of and the purpose for the payments she received. She also knew of the disputed clause, which unambiguously granted Mr. Nash an option to purchase the third nursing home. We hold that she accepted the benefits of the contract "knowingly" despite her alleged misunderstanding of the plain language of one of the contract's clauses. She is therefore estopped under section 11 to deny Mr. Buchanan's authority to enter the contract to sell the nursing homes.*

---

* In *Pettit v. Vogt,* 495 P.2d 395 (Okl.1972), a case factually similar to the instant case, the Oklahoma Supreme Court held that "the doctrine of ratification does not apply to an act claimed to have been ratified by a principal unless the act was done by one who purported to act as agent for the principal." *Id.* at 398. Nothing in the record suggests that Mr. Buchanan purported to be Mrs. Buchanan's agent rather than a sole owner. However, ratification of an agent's acts and estoppel to deny his authority are separate doctrines. *See Arnold v. All Am. Assurance Co.,* 255 Ark. 275, 499 S.W.2d 861, 865 (1973). Thus, *Pettit,* which dealt with ratification, cannot be read as limiting § 11, which deals with estoppel and was not cited in *Pettit.*

On remand, the district court should construe the contract to determine whether the option included the equipment in the nursing home. We also leave for the district court to decide whether Mr. Nash is entitled to specific performance or money damages. *See* Okla.Stat.Ann. tit. 23, § 27 (West 1951). The Buchanans claim that they are not the only owners of the personal property in the nursing home. Since this is relevant only after the district court determines whether the option included the personal property in the nursing home, we need not consider that claim on this appeal.

Reversed and remanded.