STERNE, AGEE & LEACH, INC. *v.* Kenneth WAY,
Humnoke Farms, Inc., and Hutson Way

CA 06-1410 270 S.W.3d 369

Court of Appeals of Arkansas
Opinion delivered December 19, 2007

*Bequette & Billingsly*, by: *Jay Bequette*; *Haskell Slaughter Young & Rediker, LLC*, by: *Peter J. Tepley*and *Latanishia D. Watters*, for appellant.

*Stuart Law Firm, P.A.*, by: *Ginger Stuart Schafer*, for appellees.

JOHN MAUZY PITTMAN, Chief Judge. This is an appeal from a circuit court's denial of a motion to compel arbitration.[1] Appellant Sterne, Agee, & Leach, Inc., argues two points on appeal: (1) that the trial court erred in denying its motion to compel arbitration; and (2) in the alternative, if this court affirms the denial of its motion to compel arbitration, venue should be changed from Lonoke County to Pulaski County. We find no error, and we affirm.

This court reviews a circuit court's order denying a motion to compel arbitration de novo on the record. *Richard Harp Homes, Inc. v. Van Wyk*, 99 Ark. App. 424, 262 S.W.3d 189 (2007). Our review of the record reveals that Kenneth Way and Hutson Way hired attorney Keith Moser to handle their farm and other business interests. Moser organized Humnoke Farms, Inc., in April 2002 for the Ways, and some farmland was placed in the corporation's name. Moser brought about the sale of the farmland in December 2002, which realized $1,136,919.88 in proceeds. According to the parties' stipulated facts, Moser told the Ways that:

---

[1] An order compelling arbitration is an appealable order pursuant to Arkansas Rule of Appellate Procedure–Civil 2(a)(12) which provides, in pertinent part, that an appeal may be taken from "[a]n order appealable pursuant to any statute in effect on July 1, 1979, including Ark. Code Ann. § 16-108-219 [part of Arkansas's Uniform Arbitration Act] (an order denying a motion to compel arbitration or granting a motion to stay arbitration, as well as certain other orders regarding arbitration)."

(a) he would hold Humnoke's Sales Proceeds in the trust account of his law firm Moser & Associates (the "Moser Trust Account"); (b) the funds would earn five percent (5%) interest while they were in the Moser Trust Account; (c) the [Ways] would have the ability to withdraw the principal and/or interest of the Humnoke Sales Proceeds as needed; and (d) he would invest the Humnoke sales proceeds in an investment with a potentially higher yield as soon as one was available.

At the end of this quote, the parties stipulated to a footnote that stated: "[The Ways] contend that Moser was to notify [the Ways] of such an investment when he found one." The proceeds of the sale were deposited into Moser's trust account, and on several occasions, the Ways asked Moser when the new higher-yield investment would be made; he informed them that it would be "forthcoming."

On December 26, 2002, Moser withdrew $153,387.92 of the Humnoke sales proceeds and placed that money in an investment account that he opened with appellant Sterne, Agee in Humnoke's name. Moser gave Sterne, Agee a purported corporate resolution of Humnoke authorizing the opening of the account. Although he was not an officer of the corporation, Moser signed the document as president and secretary. The address that Moser provided to Sterne, Agee was not Humnoke Farms's actual address, but Moser's business address. The funds deposited in the Sterne, Agee account drew an interest rate of 6.5% per year. According to the Ways, they had no personal knowledge of the investments at Sterne, Agee and Moser had no authority to issue the resolution by which he established the account.

On November 19, 2003, Moser sent a spurious letter of instruction from Humnoke, which he signed as president, to Sterne, Agee, directing that the account be closed and that a check to Humnoke be issued for all of the money in the account, including the income it had generated. Sterne, Agee, sent a check made out to Humnoke for $164,990.67 to the address provided by Moser. At that time, the Ways had approximately $900,000 still on deposit with Moser. Moser fled this country and was later found in Madagascar. The Ways discovered Moser's theft and filed this action on April 15, 2004, against Moser & Associates, P.A., Moser, John Holleman IV, and Sharrock Dermott.[2] They amended their

---

[2] Holleman and Dermott were "of counsel" at Moser's law firm.

complaint to include negligence and conversion claims against Sterne, Agee on May 11, 2004, seeking the amount of the initial investment and the income it generated. They described that amount as "the amount which was fraudulently withdrawn from their account at Defendant Sterne, Agee & Leach, Inc., by Defendant Moser. . . ."

On June 21, 2004, Sterne, Agee filed a motion to compel arbitration under the Federal Arbitration Act or, in the alternative, for change of venue to Pulaski County. Appellees responded to the motion by arguing that arbitration should not be compelled because they were not signatories to the account agreement; they did not give actual or apparent authority to Moser to invest their funds with Sterne, Agee or to withdraw the funds; and they did not ratify Moser's actions. In their second amended complaint, filed July 22, 2004, appellees dropped their negligence claim and alleged that they did not authorize Moser to establish the account. Sterne, Agee renewed its motion to compel arbitration or, in the alternative, for change of venue on August 16, 2004. On April 18, 2006, the parties entered joint stipulations of fact.

On August 18, 2006, the court entered an order denying Sterne, Agee's motion to compel arbitration. The order stated:

<u>Motion to Stay Proceedings and for an Order to Compel</u>
<u>Arbitration, or in the Alternative, Motion for Change of Venue filed</u>
<u>by Separate Defendant Sterne, Agee & Leach, Inc.</u>

11. Genuine issues of material fact and of law exist as to Separate Defendant Sterne, Agee & Leach, Inc.'s role in the loss of Plaintiffs' farm sale proceeds and whether Separate Defendant Sterne Agee & Leach, Inc., is liable to Plaintiffs for blindly accepting the word of Separate Defendant Moser, a good customer of Separate Defendant Sterne Agee & Leach, Inc., about Separate Defendant Moser's legal and corporate status when dealing with contracts and investments.

12. Genuine issues of material fact exist as to whether Separate Defendant Sterne, Agee & Leach, Inc., had a binding contract with Plaintiffs and whether Separate Defendant Sterne, Agee & Leach, Inc., assisted Separate Defendant Moser in converting funds owed and belonging to Plaintiffs.

13. Pursuant to Ark. Code Ann. § 16-108-202, the Court finds that Sterne, Agee & Leach has not proven there was an agreement to

arbitrate between Plaintiffs and Sterne, Agee & Leach, Inc., such that the petition to stay proceedings and compel binding arbitration is denied.

Sterne, Agee asserts that there are three reasons why the trial court committed error in denying its motion for arbitration. First, it argues that, by seeking the increase of the value of the funds invested with Sterne, Agee, appellees sought the benefit of the account agreement and thus are bound by the burdens of the contract, including the arbitration agreement. Second, it argues that Moser was acting as appellees' agent when he deposited the funds in the account. Third, it contends that, even if Moser was not authorized to enter into the account agreement, appellees ratified that agreement, including its arbitration clause, when they sought to recover not just the amount invested but also the amount earned on the investment.

Sterne, Agee emphasizes the strong national policy favoring the enforcement of arbitration agreements. *See Perry v. Thomas*, 482 U.S. 483 (1987). The liberal federal policy favoring arbitration agreements requires that any doubts regarding arbitrability should be resolved in favor of coverage under the agreement unless it can be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. *I.S. Joseph Co. v. Michigan Sugar Co.*, 803 F.2d 396 (8th Cir. 1986). Sterne, Agee also correctly points out that even a party who has not signed an arbitration agreement can be compelled to arbitrate his claims, pursuant to contract and agency principles. *See Letizia v. Prudential Bache Sec., Inc.*, 802 F.2d 1185 (9th Cir. 1986). Furthermore, a non-signatory can be estopped from refusing to comply with an arbitration clause if he has received a direct benefit from the contract. *International Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411 (4th Cir. 2000). Sterne, Agee contends that contract and agency principles, as well as estoppel, require appellees to be bound by this arbitration agreement.

We first address the issue of estoppel. Estoppel *in pais* is the doctrine by which a person may be precluded by his acts or conduct, or by failure to act or speak under circumstances where he should do so, from asserting a right which he otherwise would have had. The elements of equitable estoppel are these: (1) the party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting estoppel has a right to believe the other party so intended; (3) the party asserting estoppel must be ignorant of the facts; and (4) the

party asserting estoppel must rely on the other's conduct to his detriment. *King v. Powell*, 85 Ark. App. 212, 148 S.W.3d 792 (2004). A party who by his acts, declarations, or admissions, or by his failure to act or speak under circumstances where he should do so, either with design or willful disregard of others, induces or misleads another to conduct or dealings which he would not have entered upon, but for such misleading influence, will not be allowed, because of estoppel, afterward to assert his right to the detriment of the person so misled. *Id.* However, there is no estoppel in the absence of a change of position in reasonable reliance. *Bharodia v. Pledger*, 340 Ark. 547, 11 S.W.3d 540 (2000). Whether there has been actual reliance and whether it was reasonable are usually questions for the trier of fact. *Kearney v. Shelter Ins. Co.*, 71 Ark. App. 302, 29 S.W.3d 747 (2000). Because we find on de novo review that Sterne, Agee did not detrimentally rely on any action of appellees, estoppel is inapplicable.

Sterne, Agee next argues that the claims against it arise out of, or are related to, the account agreement and, therefore, are covered by the arbitration clause. In deciding whether a party has entered into an agreement to arbitrate under the FAA, courts are to apply general state law principles, giving due regard to the federal policy favoring arbitration. *Volt Info. Sciences, Inc. v. Board of Trustees of the Leland Stanford Junior Univ.*, 489 U.S. 468 (1989). The same rules of construction and interpretation apply to arbitration agreements as apply to contracts generally. *Hamilton v. Ford Motor Credit Co.*, 99 Ark. App. 124, 257 S.W.3d 566 (2007).

Here, contract principles would apply if there had been a contract between appellees and Sterne, Agee. The agreement's paragraph 22 provides that arbitration will apply to:

> Any controversy: (1) arising out of or relating to any of my accounts maintained individually or jointly with any other party, in any capacity, with you: or (2) relating to my transactions or account with any of your predecessor firms by merger, acquisition, or other business combination with the inception of such accounts: or (3) with respect to transactions of any kind executed by, through or with you, your officers; directors, agents and/or employees; or (4) with respect to this agreement or any other agreement entered into by you relating to my accounts or the breach thereof, shall be resolved by any arbitration conducted only at the NYSE, NASD, or AMEX or any self regulatory organization ("SRO") subject to the

jurisdiction of the securities and exchange commission and pursuant to the arbitration procedures then in effect of any such SRO as I may elect.

Sterne, Agee argues that, in seeking to recover the entire amount of the funds plus their increase in value, and by alleging that Sterne, Agee owed appellees a duty to insure that it was transferring the funds to Humnoke and not to someone impersonating its officers, appellees recognized that the agreement covers the claims in this lawsuit. It notes that a plaintiff cannot simultaneously claim the benefits of a contract and repudiate its burdens and conditions. *American Ins. Co. v. Cazort*, 316 Ark. 314, 871 S.W.2d 575 (1994). It argues that, if it owed Humnoke any type of duty, that duty arose from the account agreement. However, we do not think that appellees have received any benefit from Sterne, Agee. Their claim to the increase in value of their property during the period of conversion is not inconsistent with their assertion that they did not authorize the account. It is true that, ordinarily, the proper measure of damages for conversion is the market value of the property at the time and place of its conversion. *Buck v. Gillham*, 80 Ark. App. 375, 96 S.W.3d 750 (2003). However, the circumstances of a case may require a different standard. *McQuillan v. Mercedes-Benz Credit Corp.*, 331 Ark. 242, 961 S.W.2d 729 (1998).

Sterne, Agee also points out that, in their first amended complaint, appellees stated that they had been "damaged in the sum of $164,990.67, the amount which was fraudulently withdrawn from their account" with Sterne, Agee by Moser. It contends that appellees are bound by that pleading and cannot maintain an inconsistent position. *See International Harvester Co. v. Burks Motors, Inc.*, 252 Ark. 816, 481 S.W.2d 351 (1972). We do not think that this argument significantly advances Sterne, Agee's position. At most, the allegations in the withdrawn pleading are evidence of admissions; they are not conclusive. *See Belz-Burrows, L.P. v. Cameron Constr. Co.*, 78 Ark. App. 84, 78 S.W.3d 126 (2002).

From our examination of the record, we conclude that the arbitration clause was broad enough to cover the conversion claim if there were a contract between the parties. Whether they had such a contract will be determined by the principles of agency. Sterne, Agee asserts that Moser was acting with actual and apparent authority from appellees when he opened the account. It notes that

appellees admitted in their first amended complaint that they delegated actual authority to Moser to invest the Humnoke sales proceeds. It also argues that appellees conferred apparent authority on Moser by granting him the authority to invest the sales proceeds.

The relation of agency is created as the result of conduct by two parties manifesting that one of them is willing for the other to act for him subject to his control and that the other consents to so act. *Reed v. Smith Steel, Inc.*, 77 Ark. App. 110, 78 S.W.3d 118 (2002). The two essential elements of an agency relationship are (1) that an agent have the authority to act for the principal, and (2) that the agent act on the principal's behalf and be subject to the principal's control. *Id.* If the facts are in dispute, agency is a question of fact to be determined by the finder of fact. *Id.* Agency can be proved by circumstantial evidence, if the facts and circumstances introduced into evidence are sufficient to induce in the mind of the finder of fact the belief that the relation did exist and that the agent was acting for the principal in the transaction involved. *Id.* The law makes no distinction between direct evidence of a fact and circumstances from which a fact can be inferred. *Id.*

In Arkansas, apparent authority in an agent is such authority as the principal knowingly permits the agent to assume or which he holds the agent out as possessing; such authority as he appears to have by reason of the actual authority that he has, or such authority as a reasonably prudent man, using diligence and discretion, in view of the principal's conduct, would naturally suppose the agent to possess. *Henry v. Gaines-Derden Enters., Inc.*, 314 Ark. 542, 863 S.W.2d 828 (1993). Ordinarily, whether an agent is acting within the scope of actual or apparent authority is a question of fact for the jury to determine. *Crail v. N.W. Nat'l Ins. Co.*, 282 Ark. 175, 666 S.W.2d 706 (1984). It is not clear from the stipulated facts that appellees conferred actual authority on Moser because they dispute having given him authority to invest the funds without their approval. It does not appear that Moser had actual authority to do what he did, because it is apparent that he was not acting on behalf of appellees in opening or closing the account. It has also not been established that Moser was acting within the authority appellees knowingly permitted him to assume. Also, there was no "holding out," as the principles of

apparent authority require. Thus, a fact question regarding Moser's agency remains to be tried before it can be determined whether the parties had a contract.

 Sterne, Agee further argues that, even if appellees did not authorize Moser to open the Sterne account, they ratified the agreement because they are seeking to recover the benefits of Moser's actions (the interest on the investment). A principal may ratify an unauthorized contractual decision by an agent. Ratification refers to the express or implied adoption and confirmation by one person of an act or contract performed or entered into in his behalf by another without authority. *Arnold v. All-Am. Assur. Co.*, 255 Ark. 275, 499 S.W.2d 861 (1973). When a principal has knowledge of the unauthorized acts of his agent and remains silent, when he should speak, or accepts the benefit of such acts, he cannot thereafter be heard to deny the agency and will be held to have ratified the unauthorized acts. *Id.* Ratification may be implied rather than expressed and, thus, may be inferred from the acts and words of the principal. *Id.* Whenever the facts are in dispute, or are such that reasonable men could draw different conclusions, ratification is a question of fact for the jury; it is a question of law only when the facts are undisputed or unequivocal. *Id.* The doctrine of ratification, however, has no application if there was no agency relationship. *E.P. Dobson, Inc. v. Richard*, 17 Ark. App. 155, 705 S.W.2d 893 (1986). Thus, this issue also turns on the resolution of the fact question of whether Moser acted as appellees' agent.

 In the alternative, Sterne asks this court to hold that the trial court should have granted its motion to transfer venue to Pulaski County. However, the trial court did not rule on Sterne's alternative motion to transfer venue. This court does not address issues on which an appellant fails to obtain a ruling. *Israel v. Oskey*, 92 Ark. App. 192, 212 S.W.3d 45 (2005).

Even if the circuit court had ruled on the venue motion, we would not address it in light of the narrow scope of appellate review given to an interlocutory ruling. In *Coleman's Service Center, Inc. v. Southern Inns Management, Inc.*, 44 Ark. App. 45, 866 S.W.2d 427 (1993), this court noted that, when a trial court permits an interlocutory appeal on one issue and other issues remain to be decided, the issues raised in the appeal must be reasonably related to the order appealed from. This court stated that an interlocutory appeal may not be used as a vehicle to bring up for review matters

that are still pending before the trial court. As a general rule, an appeal from an interlocutory decision brings up for review only the decision from which the appeal was taken. In *Villines v. Harris*, 340 Ark. 319, 324, 11 S.W.3d 516, 519 (2000), the supreme court explained:

> When an appeal reaches a court via an order granting a preliminary injunction, the appellate court will not delve into the merits of the case further than is necessary to determine whether the trial court exceeded its discretion in granting the injunction.
>
> Here, we have a distinct basis and specific authority to hear the appeal from an injunction, and the extent of our review is dependent on the decision appealed from. Although we may regret our lack of ability to give a trial court sufficient guidance on remand so that it might avoid error, we cannot precipitately prevent such error by preempting the trial court's action. We have long held that our role, for better or worse, is to decline to issue advisory opinions. *See Seeco, Inc. v. Hales*, 330 Ark. 402, 414, 954 S.W.2d 234, 241 (1997). We are limited to a review of the record before us.

*Accord Doe v. Ark. Dep't of Human Servs.*, 357 Ark. 413, 182 S.W.3d 107 (2004); *Custom Micro-Sys., Inc. v. Blake*, 344 Ark. 536, 42 S.W.3d 453 (2001).

Affirmed.

ROBBINS and BIRD, JJ., agree.